*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

UNPUBLISHED
November 19, 2019

v

LANA LEE KENNEDY,

Defendant-Appellant.

No. 343961
Tuscola Circuit Court
LC No. 17-014300-FH

Before: JANSEN, P.J., and BOONSTRA and LETICA, JJ.

PER CURIAM.

Defendant appeals as of right her third-degree child abuse, MCL 750.136b(5)(b), and conspiracy to commit third-degree child abuse, MCL 750.136b(5); MCL 750.157a convictions. Defendant was sentenced to one year and four months to two years' imprisonment for the child abuse conviction, and nine days' imprisonment and five years of probation for the conspiracy conviction. We affirm.

## I. RELEVANT FACTUAL BACKGROUND

On November 9, 2016, defendant and her daughter, Tricia Deo, brought Deo's two-month-old son, WLD, to the Tuscola County Health Department to inquire about the financial benefits of the Women, Infants, and Children (WIC) program. In order to determine eligibility, the clinic assistant performed a nutrition assessment for WLD. The assessment revealed that the baby was very small and had lost significant weight since his birth, which was unusual for a child his age. Defendant and Deo indicated that he had issues with feeding and properly taking a bottle. After the nutrition assessment, a Health Department employee informed Deo and defendant that WLD needed to be seen by a doctor. Defendant or Deo stated that the child had already been evaluated by a physician, but that physician's office indicated that WLD had never been seen.

Based on the interaction with defendant and Deo, the Health Department employee contacted Centralized Intake, which operates as a call center for people to report abuse. Centralized Intake received a complaint about suspected abuse regarding WLD, particularly alleging medical and physical neglect of a child. After failed attempts to contact the family, a

-1-

Department of Health and Human Services (DHHS) worker approached Deo at her place of employment and directed her to take the child to the hospital. Deo agreed; however, defendant later called the DHHS employee and claimed that the baby did not need to see a doctor because he was healthy.

Nevertheless, Deo and defendant brought WLD to the hospital. It was determined that WLD was suffering from severe dehydration and malnutrition. As a result, WLD's liver was no longer functioning appropriately, and was beginning to deteriorate: WLD's condition was life threatening. WLD did not have any underlying medical condition, which therefore indicated that WLD had been abused and neglected.

At the time of WLD's hospitalization, it was established that defendant had been experiencing financial issues. Defendant was the primary caregiver of WLD, while Deo worked full-time during the week and on Saturdays. Defendant also controlled most of the household's finances. Defendant admitted her concern for the child's weight loss and stated that she knew that he had trouble feeding properly.

WLD did not have health insurance. Deo testified that defendant likely would have prevented her from taking WLD to the doctor because defendant was concerned about finances and the family was close to losing their home. Moreover, when asked during a police interview if financial troubles contributed to the decision to forgo medical care, defendant responded, "He has no insurance." When asked during the same interview if defendant would have taken the child to the doctor if he had health insurance, defendant responded that she probably would have.

At the close of trial, defendant was convicted of third-degree child abuse and conspiracy to commit third-degree child abuse. This appeal followed.

II. ANALYSIS

A. EXPERT WITNESSES TESTIMONY

Defendant first argues that the trial court erred by allowing expert witnesses to testify beyond their areas of expertise and comment on defendant's intent or knowledge under MCL 750.136b(5). We disagree.

In order to consider an issue on appeal, the issue must be raised before the trial court. *People v Grant*, 445 Mich 535, 546; 520 NW2d 123 (1994). As defendant only objected to one expert witness's testimony, this issue is partially preserved. When properly preserved for appeal, this Court reviews a trial court's rulings on evidentiary issues for an abuse of discretion. *People v Fomby*, 300 Mich App 46, 48; 831 NW2d 887 (2013). However, the plain error standard of review applies to unpreserved claims of nonconstitutional error. *People v Carines*, 460 Mich 750, 763-764; 597 NW2d 130 (1999). "To avoid forfeiture under the plain error rule, three requirements must be met: 1) error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights." *Id*. at 763. The final prong requires "a showing of prejudice, i.e., that the error affected the outcome of the lower court proceedings." *Id*.

MRE 702 provides that expert testimony is proper "[i]f the court determines that scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or determine a fact in issue . . . ." This Court has concluded that expert testimony is required to interpret medical conditions or medical evidence because it is beyond the ability of ordinary persons to evaluate. *People v McFarlane*, 325 Mich App 507, 518; 926 NW2d 339 (2018). "The critical inquiry, however, is whether such testimony will aid the factfinder in making the ultimate decision in the case." *People v Ray*, 191 Mich App 706, 707; 479 NW2d 1 (1991). The extent of a witness's expertise is usually for the jury to decide. *People v Whitfield*, 425 Mich 116, 123-124; 388 NW2d 206 (1986). "Moreover, if an expert's opinion is otherwise admissible, it does not become objectionable merely because it embraces an ultimate issue to be decided by the trier of fact." *McFarlane*, 325 Mich App at 519 (quotation marks and citations omitted). See also MRE 704.

Defendant argues that it was improper for the trial court to permit each medical expert to render an opinion as to whether WLD's unhealthy condition was visible to the naked eye to someone without medical training. MRE 702 provides that expert witnesses may testify so long as the testimony incorporates a specialized knowledge or skill that would assist the jury in understanding the evidence or determining a fact in issue. In this case, the expert testimony regarding what the naked eye could see accomplishes both. All of the expert witnesses who testified in this case actually treated WLD during his hospitalization. Their testimony helped the jury understand the severity of WLD's condition, based on their first-hand and specialized knowledge. The two-month-old child was described as presenting with a severely emaciated appearance and loose-hanging skin. Ultimately, these treating physicians diagnosed WLD as being severely dehydrated and malnourished. Thus, we conclude that the expert testimony testimony aided the jury in understanding the significance of the medical experts' diagnoses. Based on WLD's severe condition with no underlying medical cause, the testimony was relevant to a determination regarding whether an individual would have realized that the child required treatment just by looking at him.

Defendant further argues that the experts' testimony embraced an ultimate issue of defendant's intent or knowledge under MCL 750.136b(5)(b), which states that a person is guilty of third-degree child abuse if "[t]he person knowingly or intentionally commits an act that under the circumstances poses an unreasonable risk of harm or injury to a child, and the act results in physical harm to a child." We conclude that defendant's argument lacks merit. An expert may provide an opinion that embraces an ultimate issue to be decided by the jury. See MRE 704. Although the experts' testimony embraces, to some extent, the issue of defendant's intent or knowledge with respect to the decision not to seek medical care for WLD, the testimony was proper under MRE 704.

Defendant also argues that defense counsel provided ineffective assistance by failing to object to the testimony of three medical experts that WLD's unhealthy condition was visible to the naked eye. We disagree.

A defendant has the right to the effective assistance of counsel in a criminal case. *Strickland v Washington*, 466 US 668, 686; 104 S Ct 2052; 80 L Ed 2d 674 (1984). "Defense counsel should be strongly presumed to have rendered adequate assistance . . . ." *People v Vaughn*, 491 Mich 642, 670; 821 NW2d 288 (2012) (quotation marks and citation omitted). In

order to succeed on a claim of ineffective assistance of counsel, the defendant bears the burden of showing that trial counsel's performance fell below an objective standard of reasonableness, *Strickland*, 466 US at 688, and that the deficient performance resulted in prejudice, *id*. at 692. Whether counsel's assistance fell below a standard of objective reasonableness requires an inquiry into whether the conduct was "outside the wide range of professionally competent assistance." *Id*. at 690. "Prejudice means a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *People v Randolph*, 502 Mich 1, 9; 917 NW2d 249 (2018) (quotation marks and citation omitted).

Defense counsel's conduct did not fall below an objective standard of reasonableness. In this case, the expert witnesses provided proper testimony under MRE 702 because their special knowledge of medicine aided the jury in understanding the severity of WLD's condition as it appeared to the naked eye and determine a fact in issue regarding whether WLD's condition was caused by human agency. "[D]efense counsel is not required to make a meritless request or objection." *People v Chelmicki*, 305 Mich App 58, 69; 850 NW2d 612 (2014). Defendant's ineffective assistance of counsel claim is without merit.

## B. SUFFICIENCY OF THE EVIDENCE

Defendant next argues that the prosecution presented insufficient evidence to convict her of the offenses of third-degree child abuse and conspiracy to commit third-degree child abuse. We disagree.

This Court reviews de novo challenges to the sufficiency of the evidence. *People v Miller*, 326 Mich App 719, 833; 929 NW2d 821 (2019). "In determining whether sufficient evidence exists to sustain a conviction, this Court reviews the evidence in the light most favorable to the prosecution, and considers whether there was sufficient evidence to justify a rational trier of fact in finding guilt beyond a reasonable doubt." *People v Harris*, 495 Mich 120, 126; 845 NW2d 477 (2014). "[A] reviewing court is required to draw all reasonable inferences and make credibility choices in support of the jury verdict." *People v Nowack*, 462 Mich 392, 400; 614 NW2d 78 (2000). Moreover, "[t]he scope of review is the same whether the evidence is direct or circumstantial." *Id*. "It is for the trier of fact, not the appellate court, to determine what inferences may be fairly drawn from the evidence and to determine the weight to be accorded those inferences." *People v Hardiman*, 466 Mich 417, 428; 646 NW2d 158 (2002).

Under MCL 750.136b(5)(b), an individual is guilty of child abuse in the third degree if

> [t]he person knowingly or intentionally commits an act that under the circumstances poses an unreasonable risk of harm or injury to a child, and the act results in physical harm to a child.

MCL 750.136b(e) defines "physical harm" as "any injury to a child's physical condition."

Defendant specifically argues that the prosecution failed to present sufficient evidence to establish that she knowingly or intentionally committed an act that posed an unreasonable risk of harm or injury to WLD, and that she knew or intended that the act would pose an unreasonable

-4-

risk of harm or injury to WLD. Michigan courts have not specified whether third-degree child abuse is a specific intent crime or a general intent crime. However, our Supreme Court has concluded, "[t]he need to draw the common-law distinction between specific and general intent is not required under the plain language of the statute" as long as the jury is properly instructed concerning the statutory requirements. *People v Maynor*, 470 Mich 289, 296; 683 NW2d 565 (2004) (quotation marks omitted). "Where the language is unambiguous, we give words their plain meaning and apply the statute as written." *Id.* at 295. MCL 750.136b(5)(b) states that a person is guilty of third-degree child abuse if "[t]he person knowingly or intentionally commits an act that under the circumstances poses an unreasonable risk of harm or injury to a child . . . ." In this case, the trial court properly instructed the jury that the prosecution was required to prove that defendant "knowingly or intentionally committed an act that under the circumstances posed an unreasonable risk of harm or injury to [WLD] and that the act resulted in physical harm."

Moreover, we conclude that the prosecution presented sufficient evidence to establish that defendant acted with the intent that she argues is required to support her convictions. Deo testified that defendant knew WLD had difficulties properly taking a bottle and experienced weight loss. Defendant stated during her police interview that she was aware that WLD was losing weight, but the fact that the child had no insurance was a factor in not seeking medical care. There was expert-witness testimony that WLD's unhealthy condition was readily apparent, as WLD presented looking emaciated with loose-hanging skin. Defendant also testified that although she had been concerned WLD wasn't gaining weight, she was not the child's mother, and it was not her responsibility to provide medical care. On the basis of this testimony, the jury could find beyond a reasonable doubt that the prosecution established the element of intent or knowledge for purposes of MCL 750.136b(5).

Defendant also challenges the sufficiency of the evidence supporting her conspiracy to commit third-degree child abuse conviction. MCL 750.157a provides that "[a]ny person who conspires together with 1 or more persons to commit an offense prohibited by law, or to commit a legal act in an illegal manner is guilty of the crime of conspiracy . . . ." "The gist of conspiracy lies in the illegal agreement; once the agreement is formed, the crime is complete." *People v Seewald*, 499 Mich 111, 117; 879 NW2d 237 (2016) (quotation marks and citations omitted). "Michigan law requires no proof of an overt act taken in furtherance of the conspiracy." *Id*. "[T]here must be proof demonstrating that the parties specifically intended to further, promote, advance, or pursue an unlawful objective." *People v Justice (After Remand)*, 454 Mich 334, 347; 562 NW2d 652 (1997). "[D]irect proof of the conspiracy is not essential; instead, proof may be derived from the circumstances, acts, and conduct of the parties." *Id*.

In order to prove that defendant committed conspiracy, the prosecution must establish (1) an agreement with (2) another (3) to commit the crime of third-degree child abuse. See MCL 750.157a. The prosecution is not required to prove that the crime was actually committed. *Seewald*, 499 Mich at 117. To demonstrate an implicit agreement between defendant and Deo to intentionally delay medical care for WLD, the prosecution presented evidence that defendant had significant control over the family household and the family was experiencing financial issues at the time. Defendant was the primary caregiver of WLD, while Deo worked a full-time job. However, WLD did not have health insurance. Deo testified that she believed that had she tried to take WLD to the doctor, defendant likely would have prevented her because WLD did not have health insurance and defendant was concerned about finances. Moreover, defendant stated

during her police interview that if WLD had insurance, she probably would have taken him to the doctor. Because evidence was presented that neither defendant nor Deo attempted to seek medical care for WLD because of their financial situation, the jury could infer beyond a reasonable doubt that an agreement had been formed to delay the child's medical care. Again, we conclude that the prosecution presented sufficient evidence to support defendant's conspiracy to commit third-degree child abuse conviction.

## C. SENTENCE DEPARTURE

Finally, defendant argues that the trial court abused its discretion by departing from the minimum sentencing guidelines range that upwardly departed from defendant's intermediate sanction cell without providing substantial and compelling reasons for the departure. However, because the trial court did not depart from the recommended minimum guidelines range, and defendant's argument is without merit.

MCL 769.34(4), which addresses a defendant's entitlement to an intermediate sanction, states, in pertinent part:

> Intermediate sanctions shall be imposed under this chapter as follows:
>
> (a) If the upper limit of the recommended minimum sentence range for a defendant determined under the sentencing guidelines set forth in chapter XVII is 18 months or less, the court *shall* impose an intermediate sanction unless the court states on the record a substantial and compelling reason to sentence the individual to the jurisdiction of the department of corrections. An intermediate sanction may include a jail term that does not exceed the upper limit of the recommended minimum sentence range or 12 months, whichever is less. [Emphasis added.]
>
> * * *

However, according to *People v Lockridge*, 498 Mich 358, 392; 870 NW2d 502 (2015), trial courts are no longer bound by the sentencing guidelines. Moreover, "our Supreme Court in *Lockridge* specifically stated that any part of MCL 769.34 that refers to the guidelines as mandatory or refers to departures from the guidelines is severed or struck down." *People v Schrauben*, 314 Mich App 181, 194; 886 NW2d 173 (2016). In *Schrauben*, this Court additionally "[struck] down the requirement that a trial court must articulate substantial and compelling reasons to depart from an intermediate sanction." *Schrauben*, 314 Mich App at 194-195. This Court replaced the mandatory language of MCL 769.34(4) with permissive language that provides trial courts with the discretion to impose an intermediate sanction if the upper limit of the recommended minimum sentence is 18 months or less. *Id*. at 195. As a result, "a trial court is no longer required to impose an intermediate sanction." *Id*. at 194.

In this case, the trial court imposed a sentence within the discretionary power that *Lockridge* provided and *Schrauben* refined. The trial court properly referenced the guidelines and sentenced defendant using the Class G grid. After calculating defendant's OVs and PRVs, defendant's guidelines range was determined to be 0 to 17 months. Because the upper limit of the recommended sentence range was less than 18 months, defendant was within an intermediate

sanction cell. However, under *Lockridge* and *Schrauben*, the trial court was not required to impose an intermediate sanction. And because the sentence was within the guidelines range, this Court must affirm. MCL 769.34(10); see also *Schrauben*, 314 Mich App at 196.

Affirmed.

/s/ Kathleen Jansen
/s/ Mark T. Boonstra
/s/ Anica Letica