# Syllabus

Chief Justice:
Robert P. Young, Jr.

Justices:
Stephen J. Markman
Brian K. Zahra
Bridget M. McCormack
David F. Viviano
Richard H. Bernstein
Joan L. Larsen

**This syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader.**

Reporter of Decisions:
Corbin R. Davis

PEOPLE v SEEWALD

Docket No. 150146. Argued November 5, 2015 (Calendar No. 5). Decided April 25, 2016.

Paul Charles Seewald was charged in the 16th District Court with nine counts of falsely signing nominating petitions, which is a misdemeanor under MCL 168.544(a), and one count of conspiring to commit a legal act in an illegal manner, which is a felony under MCL 750.157a(d). Seewald and Don Yowchuang had worked in the district office of former Congressman Thaddeus McCotter during McCotter's 2012 reelection campaign. McCotter had to submit at least 1,000 valid voter signatures before the Secretary of State could certify his placement on the ballot. The day before the nominating petitions were due, Seewald and Yowchuang realized that several of the petitions had not been signed by their circulator, as required by MCL 168.544c(5). They agreed to sign the petitions as circulators, even though they had not circulated the petitions themselves, so that McCotter would qualify to appear on the ballot. The voter signatures on those petitions were subsequently disqualified under MCL 168.544c(10)(a), and the remaining signatures were too few to secure McCotter's place on the ballot. A criminal investigation of Seewald and Yowchuang then led to the charges in this case. Following the preliminary examination, the court, Sean P. Kavanagh, J., bound Seewald over to the Wayne Circuit Court as charged. Seewald moved to quash the information on the felony charge. The circuit court, Margie R. Braxton, J., granted his motion and dismissed the felony charge against him, concluding that there had been no conspiracy to commit a legal act. The Court of Appeals, SAAD and DONOFRIO, JJ. (JANSEN, P.J., dissenting), affirmed in an unpublished opinion per curiam, issued August 5, 2014 (Docket Nos. 314705 and 314706), agreeing that the prosecution could not show an agreement to commit a legal act. The Supreme Court granted the prosecution's application for leave to appeal. 497 Mich 909 (2014).

In a unanimous opinion by Justice LARSEN, the Supreme Court *held*:

The district court properly found that the prosecution had presented sufficient evidence to establish probable cause that Seewald committed the felony of conspiracy to commit a legal act in an illegal manner. The gist of conspiracy lies in the illegal agreement, and once the agreement is formed, the crime is complete. Michigan law requires no proof of an overt act taken in furtherance of the conspiracy, and the prosecution need not prove that the purpose contemplated by the unlawful agreement was accomplished. MCL 750.157a, retaining the common-law formulation of conspiracy, provides that any person who conspires with one or more other

persons to commit an offense prohibited by law or commit a legal act in an illegal manner is guilty of conspiracy. Under MCL 750.157a(a), the penalties for conspiring to commit an illegal act roughly track the penalties for the substantive offense. Under MCL 750.157a(d), however, conspiracies to commit a legal act in an illegal manner are categorically subject to penalties of up to five years' imprisonment or a $10,000 fine, or both, regardless of whether the illegal manner itself would constitute a felony or a misdemeanor if charged as a substantive offense. In this case, the sentencing scheme elevated conduct that could have been charged as a misdemeanor (either as falsely signing petitions or conspiring to do so) to conduct chargeable as a five-year felony. The prosecution argued that submitting nominating petitions with valid signatures is, in the abstract, a legal act and that Seewald and Yowchuang agreed to perform this legal act by falsely signing the petitions as circulators, which was the illegal means by which the conspirators agreed to perform the generally legal act of submitting nominating signatures. Seewald argued instead that there had never been an agreement to commit a legal act because while submitting nominating petitions with valid voter signatures is generally legal, the voter signatures on the petitions would become invalid by operation of law once he and Yowchuang falsely signed them and their submission would therefore be illegal. Under this view, the only agreement between Seewald and Yowchuang was to do an illegal act through an illegal means. The term "legal act" in the conspiracy statute, however, is properly interpreted as referring to the lawfulness of the act in general, rather than with respect to the specific facts of the case. Proof is required of an agreement to perform an act that is legal in generic terms as opposed to one that would be legal as performed in the particular circumstances of the case. The Court of Appeals erred by concluding that the illegality of the means (signing falsely) tainted the ends (submitting nominating petitions) and made those ends illegal too and that there accordingly was no legal act at all or any agreement to perform one.

Reversed and remanded to the circuit court for reinstatement of bindover order.

©2016 State of Michigan

# OPINION

Chief Justice:          Justices:
Robert P. Young, Jr.   Stephen J. Markman
                       Brian K. Zahra
                       Bridget M. McCormack
                       David F. Viviano
                       Richard H. Bernstein
                       Joan L. Larsen

FILED April 25, 2016

STATE OF MICHIGAN

SUPREME COURT

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellant,

v                        No. 150146

PAUL CHARLES SEEWALD,

      Defendant-Appellee.

BEFORE THE ENTIRE BENCH

LARSEN, J.

This case requires us to decide what alleged conduct is sufficient to warrant a bindover on the peculiar charge of "conspiring to commit a legal act in an illegal manner," MCL 750.157a(d). In an anomalous reversal of roles, defendant, Paul Seewald, argues that his aim was illicit through and through. He never agreed to commit any *legal* act. Rather he conspired to commit an *illegal* act illegally; and that double illegality should set him free. The prosecution, for its part, argues that while defendant's agreed-to

means were surely illegal, his conspiratorial ends were purely *legal*; and that legality is sufficient to try him as a felon.

The irony is not lost on us. Yet, after examining the conspiracy statute, we hold that the conduct alleged provides probable cause for trial on the charge. Accordingly, we reverse the judgment of the Court of Appeals and remand the case to the Wayne Circuit Court for reinstatement of the 16th District Court's order to bind defendant over and for further proceedings.

## I. FACTS AND PROCEDURAL HISTORY

Defendant and alleged coconspirator Don Yowchuang worked in the district office of former Congressman Thaddeus McCotter during McCotter's 2012 reelection campaign.[1] Michigan election law required McCotter to submit at least 1,000 valid voter signatures before the Secretary of State could certify his placement on the ballot.[2] Defendant and Yowchuang bore some responsibility for collecting those signatures and submitting them to the Secretary of State. The day before the nominating petitions were due, defendant and Yowchuang realized that several of the petitions had not been signed by their circulator, as required by law.[3] To solve this problem, they agreed to sign the

---

[1] We note at the outset that this case is only at the bindover stage. The facts presented in this opinion are gleaned mostly from testimony given by defendant and Yowchuang at pretrial interviews.

[2] MCL 168.544f.

[3] MCL 168.544c(5), as amended by 2014 PA 94 and 2014 PA 418, requires each individual petition to be signed and dated by the person who circulated the petition—the circulator—after the signatures for that petition have been collected. The Secretary of State is forbidden to count signatures submitted on an unsigned petition. *Id.* At the time

2

petitions as circulators, even though they had not circulated the petitions themselves. Defendant and Yowchuang explained that they signed as circulators so McCotter would qualify to appear on the ballot.

The Board of State Canvassers discovered the petitions' irregularities and, pursuant to MCL 168.544c(10)(a), disqualified the voter signatures contained thereon.[4] The remaining signatures were too few to secure McCotter's place on the ballot. Shortly after the announcement that his name would not appear on the ballot, McCotter resigned his seat in the House of Representatives.

These events led to a criminal investigation. Defendant was charged with nine counts of falsely signing petitions, a misdemeanor under MCL 168.544c(9), and one count of felony conspiracy to commit a legal act in an illegal manner under MCL 750.157a. The conspiracy count charged defendant with agreeing "together with [Yowchuang] to submit nominating petitions with valid signatures to The Michigan Secretary of State by falsely signing the petitions as the circulator[.]"[5]

---

this case arose, the version of the statute as amended by 2002 PA 431 was in effect and the applicable subsection was Subsection (4). For ease of reference, however, this opinion will use and quote the 2014 version of MCL 168.544c.

[4] Pursuant to MCL 168.544c(10)(a), any "obviously fraudulent signatures on a petition form," which include the false signature of one purporting to be a circulator, are disqualified and may not be counted toward the number of signatures a candidate needs to appear on the ballot.

[5] Yowchuang was also charged with 10 counts of felony forgery, 6 counts of misdemeanor falsely signing petitions, and 1 count of felony conspiracy to commit a legal act in an illegal manner. Those charges are not directly at issue in this case.

Following a preliminary examination, the 16th District Court bound defendant over to the Wayne Circuit Court as charged; defendant then moved to quash the information on the felony charge. The circuit court granted defendant's motion and dismissed the felony charge against him, concluding that there had been no conspiracy to commit a legal act.[6] The Court of Appeals affirmed, agreeing that the prosecution could not show an agreement to commit a legal act.[7] We granted the prosecution's application for leave to appeal.[8]

## II. STANDARD OF REVIEW

In order to bind a defendant over for trial in the circuit court, the district court must find probable cause that the defendant committed a felony.[9] This standard requires "evidence of each element of the crime charged or evidence from which the elements may be inferred."[10] Absent an abuse of discretion, a reviewing court should not disturb the district court's bindover decision.[11] An abuse of discretion occurs when the trial

---

[6] *People v Seewald*, unpublished order of the Wayne Circuit Court, entered January 18, 2013 (Case No. 12-010198-02-FH).

[7] *People v Seewald*, unpublished opinion per curiam of the Court of Appeals, issued August 5, 2014 (Docket No. 314705).

[8] *People v Seewald*, 497 Mich 909 (2014).

[9] See MCL 766.13.

[10] *People v Hill*, 433 Mich 464, 469; 446 NW2d 140 (1989), citing *People v Doss*, 406 Mich 90; 276 NW2d 9 (1979).

[11] *People v Stone,* 463 Mich 558, 561; 621 NW2d 702 (2001). See also *People v Hudson*, 241 Mich App 268, 276; 615 NW2d 784 (2000) (commenting that appellate courts

4

court's decision "falls outside the range of principled outcomes."[12]  Determining the scope of a criminal statute is a question of statutory interpretation, which we review de novo.[13]

### III.  CONSPIRACY

The "gist" of conspiracy "lies in the illegal agreement";[14] once the agreement is formed, the "crime is complete."[15]  Michigan law requires no proof of an overt act taken in furtherance of the conspiracy.  And, because the crime is complete upon the conspirators' agreement, the prosecution need not prove that "the purpose contemplated by the unlawful agreement was accomplished."[16]

At common law, conspiracy consisted of "an understanding or agreement to accomplish an unlawful end, or a lawful end by unlawful means."[17]  Most states have

---

"review the district court's original exercise of discretion" when reviewing a decision to bind a defendant over to the circuit court).

[12] *Epps v 4 Quarters Restoration LLC*, 498 Mich 518, 528; 872 NW2d 412 (2015), citing *Barnett v Hidalgo*, 478 Mich 151, 158; 732 NW2d 472 (2007).

[13] *Stone*, 463 Mich at 561, citing *People v Denio*, 454 Mich 691, 698; 564 NW2d 13 (1997).

[14] *People v Asta*, 337 Mich 590, 611; 60 NW2d 472 (1953).

[15] *People v Justice*, 454 Mich 334, 345-346; 562 NW2d 652 (1997), quoting *People v Carter*, 415 Mich 558, 568; 330 NW2d 314 (1982).

[16] *Asta*, 337 Mich at 611.

[17] *People v Tenerowicz*, 266 Mich 276, 285; 253 NW 296 (1934).  See also 2 LaFave, Substantive Criminal Law (2d ed), § 12.1(a), p 255 ("[I]n 1832 came Lord Denman's famous epigram that a conspiracy indictment must 'charge a conspiracy either to do an unlawful act or a lawful act by unlawful means' . . . .").

since abandoned this common-law formulation, jettisoning the "lawful end by unlawful means" alternative in favor of a requirement that the object of the conspiracy be itself criminal.[18] Michigan's conspiracy statute, by contrast, has retained the common-law form. MCL 750.157a provides:

> Any person who conspires together with 1 or more persons to commit an offense prohibited by law, or to commit a legal act in an illegal manner is guilty of the crime of conspiracy . . . [.]

As at common law, then, the statutory crime of conspiracy can be established in one of two ways: by proof that two or more persons have agreed to do an act that is in itself unlawful, or by proof that two or more persons have agreed to do a legal act using illegal means.

There can be little doubt that the Legislature intended to proscribe two forms of conspiracy. The plain language of the statute contemplates it,[19] and distinct penalty provisions govern the commission of conspiracies to commit legal and illegal acts.[20]

---

[18] 2 LaFave, § 12.3(a), p 287 ("[M]ost states provide that the object of a criminal conspiracy must be some crime or some felony.") (collecting statutes). See, e.g., La Stat Ann 14:26, Reporter's Comment—1950 ("By limiting 'criminal conspiracy' to cases where a substantive crime is involved we escape the hazardous undertaking of trying to determine when a lawful act is being done with a fraudulent or corrupt purpose,--a problem which plagued the common law."); Ala Code 13A-4-3, Commentary (noting the "vagueness and uncertainty of the common law definition of conspiracy").

[19] See *Sun Valley Foods Co v Ward*, 460 Mich 230, 236; 596 NW2d 119 (1999) ("If the language of the statute is unambiguous, the Legislature must have intended the meaning clearly expressed, and the statute must be enforced as written. No further judicial construction is required or permitted.").

[20] We note also that two separate committees examining the criminal code advocated a change to the conspiracy statute due to the indeterminate nature of the current law. First, the 1967 Joint Committee of the State Bar of Michigan suggested that the conspiracy

6

The statute provides penalties for conspiring to commit an *illegal* act that roughly track the penalties for the substantive offense. Conspiracies to commit a felony are subject to the same penalties as the corresponding substantive offense.[21] Conspiracies to commit a misdemeanor may be punished by no more than one year in prison, a $1,000 fine, or both.[22]

Conspiracies to commit a *legal* act in an illegal manner are treated differently. The statute makes such conspiracies categorically subject to penalties of up to five years' imprisonment, a $10,000 fine, or both, regardless of whether the "illegal manner" would constitute a felony or a misdemeanor if charged as a substantive offense.[23] On the facts of the present case, this sentencing scheme elevates conduct that could be charged as a misdemeanor—either as falsely signing petitions or as conspiracy to do the same—to

---

statute be limited to conspiracies to commit a criminal act because of the "open-ended" nature of the conspiracy to commit a legal act in an illegal manner. Israel, *The Process of Penal Law Reform—A Look at the Proposed Michigan Revised Criminal Code*, 14 Wayne L Rev 772, 819-820 (1968), citing Michigan Revised Criminal Code (final draft, 1967), § 1015, comment, p 98. In 1979, another State Bar committee recommended a change to the statute, arguing that the current formulation is "too vague and indefinite." Michigan Second Revised Criminal Code (final draft, June 1979), § 1015, Committee Commentary, p 108. The committee further noted: "[R]eported cases indicate little practical need for such a broad definition of an illicit conspiratorial objective. With few exceptions, past reported cases all have involved conspiracies to commit acts that were in themselves criminal." *Id*. at 109. However, the Legislature has not amended the statute following its initial codification in 1966 by 1966 PA 296.

[21] MCL 750.157a(a).

[22] MCL 750.157a(c).

[23] MCL 750.157a(d).

conduct chargeable as a five-year felony. In a different case, the statute might allow a prosecutor to limit punishment, by charging conduct punishable as a felony with a higher maximum penalty as a felony with a five-year maximum. The scheme thus places great discretion in the hands of prosecutors. Absent constitutional infirmity, however,[24] we must give effect to the statute the Legislature has crafted.

## IV. THE BINDOVER

We now consider whether defendant's agreement with Yowchuang can provide the basis for a bindover on a charge of violating MCL 750.157a(d). The statute specifies three elements: (1) conspiring, (2) to commit a legal act, (3) in an illegal manner. Here, the prosecution charged that defendant conspired "together with [Yowchuang] to submit nominating petitions with valid signatures to The Michigan Secretary of State by falsely signing the petitions as the circulator[.]" The parties agree that falsely signing a nominating petition as a circulator is an illegal act.[25] What divides them is whether the agreement to falsely sign as circulators can be charged as an illegal means to commit a *legal* act.

The prosecution argues that submitting nominating petitions with valid signatures to the Secretary of State is, in the abstract, a legal act. Defendant and Yowchuang agreed to perform this legal act by falsely signing the petitions as circulators. In the

---

[24] We note that defendant has raised no constitutional objections to the statute.

[25] See MCL 168.544c(8) and (9).

8

prosecution's view, falsely signing is the illegal means by which the conspirators agreed to perform the generally legal act of submitting nominating signatures.

Defendant, by contrast, argues that, on the facts of this case, there never was any agreement to commit a legal act. Although submitting nominating petitions containing valid voter signatures to the Secretary of State is generally legal, once defendant and Yowchuang falsely signed the petitions, the voter signatures contained thereon would become *invalid* by operation of law, and their submission to the Secretary of State would therefore be *illegal.* Thus, as defendant characterizes the facts here, the only agreement between defendant and Yowchuang was to do an *illegal* act through illegal means.

At bottom, then, the dispute revolves around whether to read the conspiracy statute as requiring proof of an agreement to perform an act legal in generic terms, or legal as it would be performed in the particular circumstances of the case. We conclude that it must be the former.

This Court has never opined on the scope of the "legal act" requirement under MCL 750.157a and so we have no precedent on point.[26] Yet, defendant's suggestion that we should train our focus on the specific facts of the case when construing the statute's

---

[26] The parties have identified only one case in this Court arising out of a conviction under MCL 750.157a(d): *People v Duncan*, 402 Mich 1; 260 NW2d 58 (1977). But that case did not analyze what it meant to commit a legal act in an illegal manner. The defendants there did not contest the validity of the charge, either in this Court or in the Court of Appeals. Accordingly, neither Court ruled on the question or even commented on it in dictum. To argue, by working backwards from *Duncan*'s facts, that the charge in that case must have been valid, when the question was not raised and no legal ruling on it was rendered, is to build a syllogism upon a conjecture.

9

requirement of an agreed-upon "legal act" points us in the direction of our impossibility jurisprudence. Another way to have presented defendant's argument, after all, would have been to argue that it was *impossible,* on the facts of the case, to have done the legal act alleged (submitting nominating petitions) because the illegal means alleged (false signing) made the legal act illegal. Defendant has not squarely raised an impossibility defense. Still, our precedent discussing impossibility can guide us toward the proper reading of the statutory text.

In *People v Thousand*,[27] this Court discussed the availability of an impossibility defense with respect to a charge of attempt under MCL 750.92, which criminalizes attempts to commit an "offense prohibited by law." The offense at issue was distribution of obscene material to a minor, an act which is generally illegal.[28] The defendant, however, claimed entitlement to an impossibility defense because the intended recipient of the obscene material was not, in fact, a minor, but instead an adult undercover law enforcement officer.[29] In a scholarly opinion considering the state of the law with respect to impossibility as a defense to inchoate crimes generally, the Court concluded that impossibility was not a valid defense to the crime of attempt.[30] It did not matter, therefore, that completion of the substantive offense was impossible on the facts of the

---

[27] *People v Thousand*, 465 Mich 149; 631 NW2d 694 (2001).

[28] See MCL 722.675 (currently denominating the offense as "disseminating sexually explicit matter to a minor").

[29] *Thousand*, 465 Mich at 155.

[30] *Id*. at 162-166.

10

case, the recipient being an adult, not a child. What mattered was that the defendant attempted to commit an offense generally prohibited by law.[31] The Court thus reinstated the charge against the defendant.

As noted, defendant has not squarely raised the defense of impossibility, and the parties have not briefed the question of its availability. We do not, therefore, resolve that question here. What *Thousand* suggests, however, is that the term "legal act" in the conspiracy statute is most properly read in the same manner that we read the language "offense prohibited by law" in the related statute criminalizing attempt: as referring to the lawfulness of the act in general, rather than with respect to the specific facts of the case. If, in *Thousand,* the statutory term "offense prohibited by law" had been read not as referring to offenses *generally* prohibited, but had instead been read in light of the particular facts of the case, there would have been no need to have discussed the availability of a defense. As the partial dissent in that case hinted, the charges could not have been sustained.[32]

We are buoyed in this conclusion by the realization that to read the term "legal act" to mean "an act that is legal in light of the specific facts of the case," instead of "an act that is legal generally," would threaten to drain all meaning from the legal-act prong

---

[31] *Id*. at 165-166.

[32] *Id*. at 175 (KELLY, J., concurring in part and dissenting in part). In *People v Tinskey*, 394 Mich 108; 228 NW2d 782 (1975), this Court also briefly discussed the doctrine of impossibility as a defense to a charge of attempt. The charge in *Tinskey,* however, was conspiracy, not attempt. Although the Court discharged the defendants, the order leaves some ambiguity as to the grounds for the discharge.

11

of the conspiracy statute. This we are loath to do. When possible, we strive to avoid constructions that would render any part of the Legislature's work nugatory.[33] Here, the text and structure of MCL 750.157a make clear that the Legislature intended to criminalize both conspiring to commit an offense prohibited by law *and* conspiring to commit a legal act in an illegal manner. The Court of Appeals' and defendant's analyses, however, would effectively collapse the two into one.

The Court of Appeals reasoned that the false signing (a concededly illegal act) made the later generally lawful act (submitting petitions) into an illegal act, since it involved "[defendant's and Yowchuang's] defrauding of the Secretary of State."[34] Thus, the Court reasoned, the illegality of the means (signing falsely) tainted the ends (submitting nominating petitions) and made those ends illegal too. Accordingly, the Court concluded there was no *legal* act at all, nor any agreement to commit one. But if any illegal means taints the legality of the ends, it is difficult to envision the scenario in which a person could commit a legal act in an illegal manner.[35] The Court of Appeals

---

[33] *Hoste v Shanty Creek Mgt, Inc*, 459 Mich 561, 574; 592 NW2d 360 (1999).

[34] *Seewald*, unpub op at 4.

[35] When asked at oral argument to describe a scenario in which a person might properly be charged with committing a legal act in an illegal manner, the defense referred us to the facts of *Duncan*, 402 Mich 1. Because the Court in *Duncan* did not consider the legal question before us, we consider *Duncan*'s facts only as a hypothetical. If we apply defendant's taint theory to those facts, however, we are not sure that even the charge in *Duncan* could survive. That case involved returning property to its rightful owner, which, of course, is *generally* a legal act. But, *on the facts of that case* (on which defendant would have us focus) it was to be returned only after a bribe had been paid. The return, then, being tainted by the bribe, might be better described not as a lawful act, but as the final step in an extortion. That it would have been worse to have received the

12

thus erred by giving the statute a construction that threatened to combine two distinct forms of conspiracy into one.

Defendant argues that just the opposite is true—that the prosecution's reasoning would eliminate the statutory distinction between conspiracies to commit an offense prohibited by law and conspiracies to commit a legal act in an illegal manner. We are not persuaded. It may be that the single agreement between defendant and Yowchuang satisfied the elements of both flavors of conspiracy: conspiracy to commit an offense prohibited by law, which in this case was a misdemeanor, and felony conspiracy to commit a legal act in an illegal manner. But this does not, as defendant contends, eliminate the misdemeanor offense from the statute. To the contrary, when a single act violates multiple statutes, the prosecution is given discretion in its charging decision as long as the offenses and penalties are sufficiently clear.[36] That prosecutors might often elect to charge the felony in no way makes the misdemeanor charge surplusage as a matter of law.[37]

---

bribe and then to have kept the property does not remove the taint. We are left, therefore, skeptical that any "legal act" conspiracy charge could survive on defendant's reading of the statute.

[36] See *People v Ford*, 417 Mich 66, 100; 331 NW2d 878 (1982), citing *United States v Batchelder*, 442 US 114, 126; 99 S Ct 2198; 60 L Ed 2d 755 (1979).

[37] In any event, it is by no means clear that prosecutors will always or often elect the felony charge. The scarcity of appellate cases arising under the "legal act" prong of the conspiracy statute suggests that it has not heretofore been a popular charge, despite being available since before the adoption of our criminal code. In the exercise of sound discretion, prosecutors might well elect to charge the misdemeanor offense alone or in combination with a felony.

Finally, defendant argues, in circumstances not present in this case, a ruling for the prosecution would permit future prosecutors to broaden the goals of the conspiracy when charging under MCL 750.157a(d) such that *any* conspiracy could be charged as a felony under the statute. We think the risk exaggerated. Defendant forgets that the crime of conspiracy *is* the agreement.[38] Therefore, the prosecutor does not define the scope of the conspiracy: the conspirators do. Because one of the elements of MCL 750.157a(d) is the conspiracy, the prosecution must prove beyond a reasonable doubt, either by direct or circumstantial evidence,[39] that the conspirators agreed both to commit a legal act and to do it in an illegal manner. The prosecution may not obtain a conviction simply by asserting that some legal act was the aim of the conspiracy; it must prove, beyond a reasonable doubt, an agreement to it. In this case, there is certainly probable cause to believe that the conspirators agreed to the legal act charged, given that defendant has testified under oath that they agreed to sign the petitions "for the purpose of having [the] signatures included in" the Secretary of State's count for the nomination and that Yowchuang similarly testified that the purpose for agreeing to do so was "to make [the] signatures count towards the nomination[.]"

## V. CONCLUSION

The district court properly found that the prosecution presented sufficient evidence to establish probable cause that defendant committed the felony of conspiracy to commit

---

[38] *Asta*, 337 Mich at 611.

[39] See *People v Kanar*, 314 Mich, 242 249-250; 22 NW2d 359 (1946).

a legal act in an illegal manner.  We therefore reverse the judgment of the Court of Appeals and remand the case to the Wayne Circuit Court for it to reinstate the bindover decision of the 16th District Court and for further proceedings consistent with this opinion.  We do not retain jurisdiction.

Joan L. Larsen
Robert P. Young, Jr.
Stephen J. Markman
Brian K. Zahra
Bridget M. McCormack
David F. Viviano
Richard H. Bernstein