*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellant,

v

PORSHA BRIANNE THOMPSON,

Defendant-Appellee.

UNPUBLISHED
July 15, 2021

No. 353482
Genesee Circuit Court
LC No. 18-043080-FH

Before: CAMERON, P.J., and BORRELLO and REDFORD, JJ.

PER CURIAM.

The prosecution appeals as of right the trial court's order granting defendant's motion to quash the information, dismissing the charge of one count of involuntary manslaughter, MCL 750.321, and denying the prosecution's motion to amend the information to reinstate the charge of second-degree child abuse, MCL 750.136b(3). The prosecution also appeals as of right the trial court's order denying its motion for reconsideration. For the reasons set forth in this opinion, we affirm in part and reverse and remand in part.

## I. BACKGROUND

This appeal arises out of the charges brought by the prosecution in 2019 for the death of defendant's 22-day-old infant son in November 2013. Defendant's preliminary examination was held on November 22, 2019, and the prosecution presented a single witness, Detective Sergeant Ronald Dixon of the City of Flint Police Department, who testified that he was called to investigate the baby's death. He talked to defendant, who told him that she was at a friend's house the previous night and arrived home at approximately 1:00 to 2:00 a.m. Defendant told Dixon that she fed the baby and changed his diaper, and that she decided to sleep on her downstairs couch and put the baby in a car seat next to her. Defendant woke up the next morning at approximately 11:00 a.m.; the house was very hot and the thermostat was set at 86 degrees. Defendant turned the thermostat down and went to check on the baby, who appeared to be hot and stiff. After the baby did not wake up, defendant called 911 and the baby was taken to the hospital. An autopsy was performed

-1-

on the baby by the deputy medical examiner, who opined that the cause of the baby's death was dehydration due to hyperthermia.[1]  The autopsy also stated that the "manner of death is accident."

Following this testimony and the arguments of the parties, the district court initially bound defendant over on a charge of involuntary manslaughter, MCL 750.321, but refused to bind defendant over on a charge of second-degree child abuse, MCL 750.136b(3)(a).  Then, later that day, the district court, *sua sponte*, recalled the parties in the courtroom, and announced that even though it no longer had jurisdiction over the matter:

> I'm going to find that based upon the totality of the record and upon reconsideration that at most here there was negligence by the defendant as to the child, and it was not gross negligence.  And this finding is consistent with the autopsy report which was admitted as People's Exhibit #1 which indicated that the manner of death was accident.
>
> And, accordingly, I again will find that this was not Involuntary Manslaughter.  I made an error and I—I will indicate I was incorrect in my ruling.[2]

On January 6, 2020, defendant filed a motion to quash the charge of involuntary manslaughter, and the prosecution filed a motion on February 14, 2020, to amend the information pursuant to *Goecke*[3] to reinstate the second-degree child abuse charge.

The circuit court granted defendant's motion and dismissed the involuntary manslaughter charge, and denied the prosecution's motion to amend the information to reinstate the second-degree child abuse charge, stating, in relevant part:

> The testimony that was elicited at the examination was that [defendant] arrived home with her child late in the evening, in the early morning hours, changed the child, fed the child, slept in the downstairs area of the home with the child within arms reach in a car seat and that she awoke late into the morning, some nine to 10 hours later, realized that the home was very warm and checked the thermostat, turned the thermostat down.  So obviously the thermostat was turned up at some point.  There is no information on the record of how that occurred.  That she checked on her child and called 911 and went with the child to the hospital.
>
> So the question is is [sic] that gross negligence, or negligence, or nothing at all?  And I'm not going to make a comment with regard to whether it is negligence or nothing at all.  But I certainly do find that based upon that record that Judge McCabe did abuse his discretion in initially finding gross negligence.  So I am going to grant the defendant's motion to quash the Information and dismiss the matter . . . ."

---

[1] Hyperthermia is "an exceptionally high fever . . . ."  *Merriam-Webster's Dictionary* (11th ed).

[2] In making its ruling, the circuit court made clear it did not take consider any of the statements of the district court which occurred after that court bound the defendant over for trial.

[3] *People v Goecke*, 457 Mich 442; 579 NW2d 868 (1998).

The prosecution filed a motion for reconsideration, arguing that under this Court's holding in *People v Head*, 323 Mich App 526; 917 NW2d 752 (2018), the district court erred by determining that second-degree child abuse was not applicable because the child died. The circuit court noted that involuntary manslaughter and second-degree child abuse are not mutually exclusive under *Head*, but denied the prosecution's motion for reconsideration, finding there was insufficient evidence that defendant made any affirmative, reckless act, as required for second-degree child abuse. This appeal ensued.

## II. ANALYSIS

On appeal, the prosecutor argues that the circuit court erred by finding that the district court abused its discretion when it bound defendant over for involuntary manslaughter, and by quashing the charge of involuntary manslaughter. According to the prosecutor, the question of whether defendant acted with gross negligence was a close question, and as such, it was not outside of the reasonable and principled outcomes for the district court to find defendant was grossly negligent when defendant left her 22-day-old child, who was born with fluid in his lungs, in a car seat in a "super-heated" home without checking on him for at least nine hours. Under those circumstances, the prosecutor argues, the district court's finding of probable cause was not an abuse of discretion, and a jury should have determined whether defendant failed to use ordinary care and diligence and whether the risk of serious injury or death was apparent to the ordinary mind.

As to the charge of second-degree child abuse, the prosecutor argues that the district court abused its discretion by refusing to bind over defendant on a charge of second-degree child abuse. The prosecutor posits that the district court's decision was based an error of law, which was an abuse of discretion, because contrary to the statements of the district court, involuntary manslaughter and second-degree child abuse are not mutually exclusive. Although the circuit court recognized, in its order denying the motion for reconsideration, that death can be serious physical injury, it decided on its own, without examining the evidence in the record,[4] that there was no probable cause because there was insufficient evidence defendant committed an affirmative reckless act. Generally, determining whether an act was reckless is a question for the jury. Further, there was sufficient evidence of second-degree child abuse to establish probable cause. It should be inferred that defendant set the heat in the room because she was the only adult present, and then left the infant in those conditions, which caused him to overheat and die. There was no evidence that anyone else was in the home that night or lived there. Even if defendant did not set the temperature herself, a reasonable inference would be that it was too hot for the infant when she arrived home, and she acted recklessly by exposing him to the hot environment in the house. As a consequence, the prosecution asserts, this Court should remand to the circuit court to reinstate the second-degree child abuse charge.

We review a district court's bindover decision for an abuse of discretion. *People v Norwood*, 303 Mich App 466, 468; 843 NW2d 775 (2013). A reviewing court examines the entire preliminary examination record, and is not permitted to substitute its judgment for the lower court's judgment. *Id*. We view the evidence in a light most favorable to the prosecution. *People*

---

[4] This argument is contrary to the circuit court's explicit statements that it reviewed the materials, including the information and the transcript from the preliminary examination.

*v Fairey*, 325 Mich App 645, 650; 928 NW2d 705 (2018). A circuit court's decision on a motion to quash a bindover is "not entitled to deference because this Court applies the same standard of review to this issue as the circuit court." *People v Hudson*, 241 Mich App 268, 276; 615 NW2d 784 (2000). We review a circuit court's decision on a motion to quash "only to the extent that it is consistent with the district court's exercise of discretion . . . . Thus, in simple terms, we review the district court's original exercise of discretion." *Id*. A district court abuses its discretion when its decision "falls outside the range of principled outcomes." *People v Seewald*, 499 Mich 111, 116; 879 NW2d 237 (2016) (quotation marks and citation omitted). When a court makes an error of law, it also abuses its discretion. *People v Waterstone*, 296 Mich App 121, 132; 818 NW2d 432 (2012). We review de novo questions of law. *People v Lukity*, 460 Mich 484, 488; 596 NW2d 607 (1999).

MCL 766.13 addresses the magistrate's duties following a preliminary examination:

> If the magistrate determines at the conclusion of the preliminary examination that a felony has not been committed or that there is not probable cause for charging the defendant with committing a felony, the magistrate shall either discharge the defendant or reduce the charge to an offense that is not a felony. If the magistrate determines at the conclusion of the preliminary examination that a felony has been committed and that there is probable cause for charging the defendant with committing a felony, the magistrate shall forthwith bind the defendant to appear within 14 days for arraignment before the circuit court of that county, or the magistrate may conduct the circuit court arraignment as provided by court rule.

In order to bind a defendant over for trial in the circuit court, the district court must find probable cause that the defendant committed a felony. *Seewald*, 499 Mich at 116. "Probable cause requires a quantum of evidence sufficient to cause a person of ordinary prudence and caution to conscientiously entertain a reasonable belief of the accused's guilt." *People v Yost*, 468 Mich 122, 126; 659 NW2d 604 (2003) (quotation marks and citation omitted). There must be "evidence of each element of the crime charged or evidence from which the elements may be inferred." *Seewald*, 499 Mich at 116 (quotation marks and citation omitted). The prosecution bears the burden of producing evidence that "a crime was committed and that probable cause exists to believe that the charged defendant committed it." *Fairey*, 325 Mich App at 649. However, "[i]f the evidence introduced at the preliminary examination conflicts or raises a reasonable doubt about the defendant's guilt, the magistrate must let the factfinder at trial resolve those questions of fact." *Hudson*, 241 Mich App at 278.

Our Supreme Court has described involuntary manslaughter as a "catch-all" crime "including all manslaughter not characterized as voluntary: Every unintentional killing of a human being is involuntary manslaughter if it is neither murder nor voluntary manslaughter nor within the scope of some recognized justification or excuse." *People v Holtschlag*, 471 Mich 1, 21; 684 NW2d 730 (2004) (quotation marks and citation omitted). The *mens rea* required for involuntary manslaughter is gross negligence or an intent to injure. See *Id*. at 21-22.

Gross negligence "means wantonness and disregard of the consequences that may ensue." *Head*, 323 Mich App at 532. "Wantonness exists when the defendant is aware of the risks but

indifferent to the results; it constitutes a higher degree of culpability than recklessness." *Id*. The elements of gross negligence that a prosecutor must show are:

> (1) Knowledge of a situation requiring the exercise of ordinary care and diligence to avert injury to another.

> (2) Ability to avoid the resulting harm by ordinary care and diligence in the use of the means at hand.

> (3) The omission [i.e., failure] to use such care and diligence to avert the threatened danger when to the ordinary mind it must be apparent that the result is likely to prove disastrous to another. [*Id*. (alteration in original; quotation marks and citation omitted).]

The prosecution instructs this Court that our decision in *Head* controls the outcome in this case. In *Head*, 323 Mich App at 533, the defendant argued there was insufficient evidence of gross negligence for his involuntary manslaughter conviction. In that case, the defendant allowed his children to play in a room with a loaded shotgun, and one of his children shot the other child in the head. *Id*. at 534. This Court held that there was sufficient evidence of gross negligence because the defendant knew the situation required the exercise of ordinary diligence and care, and failed to exercise care and diligence when he allowed a loaded shotgun to be readily accessible to his young children. *Id*. The prosecutor also cites to *People v Giddings*, 169 Mich App 631, 632; 426 NW2d 732 (1988),[5] where the defendants' eight-week-old infant died of starvation. This Court held that there was sufficient evidence to support bindover on involuntary manslaughter charges. *Id*. at 634-635. In that case, there was testimony that the infant had an emaciated appearance and a doctor testified that anyone who saw the child "should have realized that the child's condition was not normal . . . ." *Id*. at 635. This Court reasoned that the evidence supported an inference that the defendants were grossly negligent. *Id*.

In this case, the prosecution argues that the district court's decision was within the range of reasonable and principled outcomes, because it contends that the question whether defendant was grossly negligent was a close question. While the prosecutor did not present much evidence at the preliminary examination, one piece of evidence supports their argument; the autopsy report.[6] In the autopsy report, Dr. Cho opined that the infant died of dehydration due to hyperthermia; therefore, the danger posed to the infant was high temperatures. In the autopsy report, Cho theorized that "[t]he decedent was reportedly still strapped into a car seat when placed in a very warm environment in doors (sic) for some period of time. The prolonged exposure to such warm environmental conditions lead to the dehydration." In *Head*, this Court reasoned that keeping a readily accessible loaded shotgun in a room where children play was likely to prove disastrous to

---

[5] Because this case was decided before November 1, 1990, it is not binding on this Court. MCR 7.215(C)(1); *People v Green*, 260 Mich App 710, 720 n 5; 680 NW2d 477 (2004). However, cases decided before November 1, 1990, may provide persuasive value. *Id*.

[6] This Court had to request a copy of the autopsy report from the parties as neither party had filed the report on appeal.

the children. Here, the prolonged exposure to the heat sets forth sufficient evidence to support a finding of probable cause that defendant allowed the victim to be exposed to prolong heat causing dehydration and then death. The evidence that defendant exposed the child to a prolong exposure to a "warm environment" evidence demonstrates "wantonness and disregard of the consequences that may ensue." *Head*, 323 Mich App at 532.

On review of the issue of involuntary manslaughter, the record reveals that the circuit court did not properly take into consideration the autopsy report but rather substituted its judgment for that of the district court. As such, the circuit court abused its discretion in failing to affirm the district court's finding that probable cause existed for involuntary manslaughter. We therefore reverse the decision of the circuit court and remand to that court for further proceedings on the charge of involuntary manslaughter.

The prosecution also argues that the district court abused its discretion by failing to bind over defendant on a charge of second-degree child abuse. The prosecution contends that the district court made an error of law when it concluded that a child who died cannot have suffered serious physical harm within the meaning of the statute, and the prosecution further argues that there was sufficient evidence that defendant committed second-degree child abuse. Although we agree that the district court committed an error of law by concluding that second-degree child abuse could not apply when the child's death resulted, we nonetheless affirm both the district and circuit court's decision to dismiss the charge of second-degree child abuse.

Under MCL 750.136b(3),[7] a defendant is guilty of second-degree child abuse if any of the following apply:

(a) The person's omission[8] causes serious physical harm or serious mental harm to a child or if the person's reckless act causes serious physical harm or serious mental harm to a child.

(b) The person knowingly or intentionally commits an act likely to cause serious physical or mental harm to a child regardless of whether harm results.

(c) The person knowingly or intentionally commits an act that is cruel to a child regardless of whether harm results.

---

[7] MCL 750.136b was amended, effective June 1, 2020, by 2020 PA 49. However, MCL 750.136b(3) and its subsections were unaffected by the amendment.

[8] For the purposes of MCL 750.136b, "omission" means "a willful failure to provide food, clothing, or shelter necessary for a child's welfare or willful abandonment of a child." MCL 750.136b(1)(c).

(d) The person or a licensee, as licensee is defined in section 1 of 1973 PA 116, MCL 722.111,[9] violates section 15(2) of 1973 PA 116, MCL 722.125.[10]

It appears that defendant was charged on a theory of a reckless act.[11] Here, relative to the issue of second-degree child abuse, the district court concluded, "I'm not going to bind over count two. I—I don't think—it's either a death or it's not. And proofs don't show Child Abuse Second Degree; that would be for a child who didn't die." In *Head*, 323 Mich App at 536, this Court concluded that the victim suffered serious physical harm because the victim died from a gunshot wound. Accordingly, the district court made a legal error when it determined that defendant could not be bound over for second-degree child abuse because the infant died, and it therefore abused its discretion. *Waterstone*, 296 Mich App at 132.

The prosecution argues that the circuit court erred by finding that there was insufficient evidence that defendant committed any reckless act. There are four elements to show a defendant is guilty of second-degree child abuse based on a reckless act:

> (1) that the defendant was a parent or a guardian of the child or had care or custody of or authority over the child, (2) that the defendant committed a reckless act, (3) that, as a result, the child suffered serious physical harm, and (4) that the child was under 18 years old at the time. Generally, determining whether an act was reckless is a jury question. [*Head*, 323 Mich App at 535-536 (quotation marks and citation omitted).]

Failing to act does not constitute a reckless act, instead "the defendant must do something and do it recklessly." *Id*. at 536. In *People v Murphy*, 321 Mich App 355, 361; 910 NW2d 374 (2017), this Court concluded that there was no evidence the defendant committed a reckless act that caused the victim to suffer serious physical harm. In that case, the prosecutor failed to present evidence of any affirmative act that led to the victim's death, and only argued that the defendant failed to clean her house to make sure the victim could not reach morphine pills. *Id*. In contrast, in *Head*, 323 Mich App at 536, this Court concluded that there was evidence the defendant committed reckless acts by storing a loaded shotgun in an unlocked bedroom closet and allowing his children to play in the bedroom without supervision. The Court reasoned that, unlike the defendant in *Murphy*, 321 Mich App at 361, the defendant affirmatively acted by storing the loaded shotgun in an unlocked closet and allowing his children to play there.

---

[9] MCL 722.111(r) defines a licensee as "a person, partnership, firm, corporation, association, nongovernmental organization, or local or state government organization that has been issued a license under this act to operate a child care organization."

[10] MCL 722.125 governs violations of the Child Care Organizations Act.

[11] Specifically, the prosecutor stated, "Child Abuse Second degree did cause (sic) serious physical harm being the death of a child by inappropriately supervising a 22 day old child." On appeal, the parties do not dispute that the relevant question is whether defendant committed a reckless act.

In this case, like in *Murphy*, 321 Mich App at 361, the prosecution failed to present any evidence that defendant's *affirmative acts* caused the infant's death. There was no evidence presented at the preliminary examination regarding who turned up the thermostat, or when it was turned up. The prosecution argues that there was sufficient evidence defendant committed a reckless act because it contends that the only reasonable inference is that defendant set the thermostat because she was the only adult present.[12] However, there was no evidence presented regarding whether anyone else was present the night the infant died. Defendant merely told Detective Dixon that it was 86 degrees when she woke up at 11:00 a.m.; she not did explain why the thermostat was at 86 degrees. In fact, Detective Dixon testified that defendant told him when she saw it was 86 degrees she turned it down, which suggests that she may not have turned it up. As such, it would not be proper to infer that defendant turned up the thermostat in the absence of evidence that supports that inference. See *Seewald*, 499 Mich at 116 (stating that probable cause requires either evidence of the elements of a crime or "evidence *from which* the elements may be inferred") (emphasis added; quotation marks and citation omitted).

The prosecution alternatively argues that defendant acted recklessly because there was a reasonable inference it was too hot when she arrived at the home and still brought the infant into the home. There was no evidence presented at the preliminary examination regarding the temperature of the apartment at 1:00 a.m. or 2:00 a.m., when defendant arrived home. Detective Dixon testified defendant told him she woke up and was very hot, and then checked the thermostat. Based on the dearth of the record, it would not be reasonable to infer the house was too hot at 1:00 or 2:00 a.m. on the sole basis of the fact that the thermostat was set at 86 degrees 10 or 11 hours later.

Similar to *Murphy*, 321 Mich App at 361, the evidence presented suggests only that defendant's *inaction* may have caused the infant's death. Defendant told Detective Dixon that she fed and changed the baby at 1:00 or 2:00 a.m., but failed to check on him again until 11:00 a.m., approximately 10 to 11 hours later. Even presuming defendant's failure to check on the infant for 10 to 11 hours was negligent, there is no evidence any of defendant's *affirmative* acts led to his death. Therefore, viewing the evidence in the light most favorable to the prosecution, there was insufficient evidence to bind defendant over on a charge of second-degree child abuse. Accordingly, the circuit court did not err in denying the prosecutor's motion to amend the information to reinstate the charge because there was insufficient evidence of a reckless act to bind defendant over on that charge.

Affirmed in part and reversed and remanded for further proceedings consistent with this

_____

[12] The prosecution supports this argument with facts from this Court's opinion from a child protective proceeding against defendant. See *In re Thompson*, unpublished per curiam opinion of the Court of Appeals, issued October 25, 2018 (Docket No. 340331). However, this Court cannot consider any of the facts from that opinion because our review is limited to evidence presented at the preliminary examination. See *Norwood*, 303 Mich App at 468.

opinion.  We do not retain jurisdiction.

/s/ Thomas C. Cameron
/s/ Stephen L. Borrello
/s/ James Robert Redford