*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

DERRICK SMITH,

Defendant-Appellant.

UNPUBLISHED
November 18, 2024
1:44 PM

No. 367961
Washtenaw Circuit Court
LC No. 21-000105-FC

Before: GADOLA, C.J., and SWARTZLE and LETICA, JJ.

PER CURIAM.

Defendant pleaded no contest to assault with intent to murder (AWIM), MCL 750.83, and assault with a dangerous weapon (felonious assault), MCL 750.82, after reaching a sentencing agreement with the prosecutor. The trial court decided not to follow the sentencing agreement and denied defendant's motion to withdraw his plea. We vacate defendant's convictions and sentences and remand to give defendant the opportunity to withdraw his plea.

## I. BACKGROUND

At defendant's preliminary examination, the victim, defendant's ex-wife, testified that in December 2020, defendant had attacked her, hitting her with a ladle and ultimately stabbing her more than 20 times. Their 16-year-old son attempted to protect the victim, and the victim and son were able to get upstairs and call 911. Defendant fled, but officers found him and a bloody knife. Defendant was charged, as a fourth-offense habitual offender, with AWIM, assault with intent to do great bodily harm less than murder (AWIGBH), MCL 750.84, and felonious assault.

At a November 2022 hearing, defendant stated that he wanted to accept a plea agreement. The prosecutor explained that if defendant pleaded no contest to AWIM and felonious assault, the prosecutor would dismiss the AWIGBH charge and defendant's habitual-offense status. Defendant would be subject to 11½ to 25 years in prison under the agreement, while his sentencing guidelines provided for a minimum of 22 to 37½ years in prison.

The trial court explained that if defendant did "everything according to what we plan on," it would sentence defendant as agreed-upon. If defendant did something before sentencing,

however, that caused the trial court to change its mind, "like [he] g[o]t another case or [he] d[id] something else," or if the trial court read something shocking in the PSIR, then the trial court might "back out." If that happened, the trial court explained, then defense counsel would need to move the court to allow defendant to withdraw his plea, which was not guaranteed. The trial court stated, "That's not the normal situation but you just need to know that's a possibility." Defendant stated that he understood. After defendant expressed some hesitation, however, the trial court adjourned the plea until the following morning.

At the next hearing, defendant acknowledged that he understood the plea agreement and wanted to proceed. The trial court explained that

it is possible that if I look at your presentence report or you get into trouble between now and the date of your sentencing, I could not support—I could choose to not support the plea agreement and the sentence agreement and you would have already plead[ed] guilty. I'm not saying that you're gonna do that. But if that were to happen, [defense counsel] would have to ask me through a motion to allow you to withdraw your plea and I can't guarantee you that that will happen.

The trial court asked defendant if he understood, and defendant responded, "Uh, that's scary but yeah. I mean, 'cause—oh. I—I thought it was once—I thought it seals the deal." The trial court told defendant that if he did not "do anything wrong between now and the date of your sentencing," and his presentence investigation report (PSIR) was not "shocking," then the trial court would follow the agreement. The trial court went "along with these all the time." Defendant expressed understanding. The trial court asked additional questions to ensure the plea was voluntary and explained the maximum possible sentences of the charges, and defendant pleaded no contest to AWIM and felonious assault.

Following the plea hearing, but before sentencing, defendant moved, *in propria persona*, for relief from judgment, to discharge his attorney, to withdraw his plea, and for an evidentiary hearing on the basis of ineffective assistance of counsel for failing to investigate the case and pressuring defendant to plead. The trial court, with consent of defense counsel, agreed to assign defendant a different attorney.

At a hearing on defendant's remaining motions, defendant attempted to supplement his new counsel's arguments, despite stating that she had done a "perfect" job. The trial court told defendant that he had previous opportunities to address the court and should allow his counsel to argue for him. Defendant responded, "Let's just put a muzzle on my mouth." The trial court stated that if defendant could not control himself, he would ask the jail staff to step in. The trial court muted defendant, and defense counsel addressed the issue of allowing defendant to withdraw his plea. The trial court denied defendant's motion to withdraw his plea.

During defendant's sentencing hearing in May 2023, defendant again argued for a *Ginther* hearing. Defendant said, "I already know you're gonna deny that. So, you can just get past that if you want to 'cause you—you biased. So, go ahead and deny that. Get to what you got. Go ahead. Go on." The trial court permitted counsel to argue the issue and then denied the motion.

After the trial court ruled against defendant's motion, the prosecutor noted that defendant, who was appearing remotely from jail, was no longer on the screen. A corrections officer explained that defendant "[d]ecided he wanted to go back in his cell. He totally got up and leave— he left." The trial court asked the jail staff to set up a monitor outside of defendant's cell so that they could proceed with sentencing, and a corrections officer explained that defendant went "out on his out time." The trial court stated that it did not "care if we adjourn it."

The prosecutor then asserted that she "knew this was gonna happen" and argued that defendant had failed to attend sentencing, permitting the trial court to sentence defendant without regard to the sentencing agreement. The victim was present, and the prosecutor argued that it was "an absolute dishonor to" the trial court for defendant to walk away from the proceedings. The prosecutor asked the trial court to sentence defendant according to the guidelines.

The trial court gave defense counsel time to confer with defendant, who had returned. When the hearing resumed, defendant was disruptive, interjecting argument and opinions, accusing the judge and prosecutor of corruption, and asserting that God would judge them. At one point, the trial court explained that defendant's AWIM conviction carried a maximum penalty of life in prison were the prosecutor to withdraw the sentencing agreement. Defendant stated, "Why would I take a plea like that if I understood it? A plea to life? I can go to trial and I could of just went to trial? That—that doesn't even make sense."

The prosecutor asked the trial court to proceed to sentencing and stated that "hopefully [defendant] stops talking" because if he engaged in misconduct, or failed to appear or absconded, then the prosecutor could withdraw the sentencing agreement. Defense counsel put on the record that defendant had heard what the prosecutor said.

When the trial court began to address the victim-impact statement, defendant said, "I'm not trying to hear nothing (indiscernible)." The trial court adjourned the hearing, stating, "I'm withdrawing any support of your sentence agreement." The trial court stated that it would sentence defendant the following week, but offered the victim the opportunity to speak,[1] and defendant stated, "You gonna do that, I might as well go. Bye. I'm not hearing that."

The prosecutor asked the trial court if it was withdrawing the sentencing agreement because defendant had "been in contempt of the Court and he's been—been contemptful to the Court." The trial court agreed.

When sentencing resumed two weeks later, the trial court indicated that it was no longer following the sentence agreement. Defense counsel referred to the trial court's explanation during the plea hearing about when it would follow the sentence agreement, arguing that it was "vague" as it related to misconduct, and, accordingly, defendant should be permitted to withdraw his plea. Defense counsel argued that caselaw on what actions constitute misconduct for purposes of MCR

---

[1] Under MCL 780.765(2), "Unless the court has determined, in its discretion, that the defendant is behaving in a disruptive manner or presents a threat to the safety of any individuals present in the courtroom, the defendant must be physically present in the courtroom at the time a victim makes an oral impact statement under subsection (1)."

6.310(B)(3) showed violations of a clear bond order or order of a court, which had not occurred here.

As to his actions during the previous hearing, defendant explained that, out of frustration, he had defended himself and spoke about God. Defendant stated, "[I]f this is what you want to call misconduct, then go right ahead." Defendant acknowledged that he had walked away, but claimed that it was because he thought that the hearing was over, and he had subsequently returned. Defendant asserted that he had not meant to disrespect the trial court and that he had always previously asked the trial court for permission to speak, and he had never "cursed" the trial court, "caught another case," or absconded. Defendant stated that the trial court had told him that it would sentence in line with the agreement if it was not shocked by defendant's PSIR and if defendant did not to commit another offense.

The trial court did not remember if defendant had "cursed," but noted that defendant had struggled with impulse control "during a lot of these hearings," including speaking over the trial court and walking out of the room at the jail. The trial court sentenced defendant to 22½ years to 37½ years in prison for the AWIM conviction and 24 to 48 months in prison for the felonious-assault conviction. The trial court was uncertain whether it had found defendant in contempt at the previous hearing, but, if it had, then it was "going to cancel that or [it] will have the Defendant's sentence substitute as his purging contempt of the Court."

Defendant sought leave to appeal, which this Court granted. *People v Smith*, unpublished order of the Court of Appeals, entered November 9, 2023 (Docket No. 367961).

## II. ANALYSIS

We review for an abuse of discretion a trial court's decision whether to permit a defendant to withdraw a plea. *People v Brown*, 492 Mich 684, 688; 822 NW2d 208 (2012). A trial court abuses its discretion when its decision "falls outside the range of principled outcomes." *People v Seewald*, 499 Mich 111, 116; 879 NW2d 237 (2016) (cleaned up). We review de novo any underlying questions of law and for clear error the trial court's factual findings. *People v Martinez*, 307 Mich App 641, 646-647; 861 NW2d 905 (2014). "The proper interpretation and application of a court rule is a question of law that is reviewed de novo." *Id*. at 647. (cleaned up).

"A guilty or no-contest plea constitutes a waiver of several constitutional rights and thus triggers specific protections for the defendant." *People v Guyton*, 511 Mich 291, 298; 999 NW2d 393 (2023). "The Due Process Clause of the Fourteenth Amendment requires that a plea be voluntary and knowing." *Id*. (cleaned up). Our Supreme Court has explained "that the waiver of a jury trial cannot be knowing or voluntary when the waiver was induced by reliance on a total package of concessions by both parties to which one party—the state—is no longer bound." *People v Killebrew*, 416 Mich 189, 207; 330 NW2d 834 (1982). When a "judge refuses to agree to the state's concessions, the defendant may refuse to waive his constitutional rights." *Id*.

After a trial court has accepted a plea, a defendant does not have an absolute right to withdraw the plea. *People v Warren*, 505 Mich 196, 203; 949 NW2d 125 (2020). A defendant is generally entitled to withdraw a plea when "the plea involves an agreement for a sentence for a specified term or within a specified range, and the court states that it is unable to follow the

-4-

agreement." MCR 6.310(B)(2)(a). A defendant may also withdraw a plea when "the plea involves a statement by the court that it will sentence to a specified term or within a specified range, and the court states that it is unable to sentence as stated." MCR 6.310(B)(2)(b).

Under MCR 6.310(B)(3), however, "a defendant's misconduct that occurs between the time the plea is accepted and the defendant's sentencing may result in a forfeiture of the defendant's right to withdraw a plea." *Martinez*, 307 Mich App at 649 n 5 (cleaned up). "For purposes of this rule, misconduct is defined to include, but is not limited to: absconding or failing to appear for sentencing, violating terms of conditions on bond or the terms of any sentencing or plea agreement, or otherwise failing to comply with an order of the court pending sentencing." MCR 6.310(B)(3).

Before the addition of Subrule (B)(3), this Court had explained that a "sentencing recommendation contemplated that no intervening factors would occur between the plea and the sentencing." *People v Kean*, 204 Mich App 533, 536; 516 NW2d 128 (1994) (cleaned up). In *Kean*, 204 Mich App at 535-536, this Court held that the defendant was not entitled to withdraw his plea when he walked away from a treatment center he had entered, as a condition of his plea, did not appear at sentencing, and was only located and arrested over two-and-a-half years later.

At the time of the plea hearings in this case, the trial court conditioned its adherence to the agreement on whether defendant got "into trouble" or did something "wrong" between his plea and sentencing. The trial court did not, however, clarify what constituted "trouble."

The trial court also did not specify what conduct, under MCR 6.310(B)(3), defendant had engaged in that prevented him from withdrawing his plea, although it explained during sentencing that defendant struggled with "impulse control," had spoken over the court, and had walked out of the jail. The prosecutor argues that defendant failed to appear at sentencing by twice walking away from the proceedings. The first instance occurred when the trial court had denied defendant's motion for an evidentiary hearing but, after conferring with his counsel, defendant reappeared at the beginning of the sentencing proceedings. At that point, defendant was verbally disruptive.

When the trial court gave the victim an opportunity to speak, defendant stated that he was "not trying to hear nothing." The trial court stated that it was withdrawing support of defendant's sentence agreement. Defendant then stated, "You gonna do that, I might as well go." Accordingly, defendant left again, missing the victim's statement, but that was only after the trial court had withdrawn its support of the sentencing agreement. Defendant then attended the adjourned hearing. The record does not, therefore, indicate that defendant actually failed to appear at sentencing when he was present at substantial portions of the hearing, and entirely present at the subsequent sentencing proceeding. Instead, defendant's actions before the trial court's decision to withdraw the sentencing agreement included defendant's first exit, following the trial court's denial of his motion for *Ginther* hearing, and several interruptions.

Had the trial court explicitly held defendant in contempt of court, the outcome on appeal might differ. Contempt of court includes a "willful act, omission, or statement that tends to impair the authority or impede the functioning of a court." *People v Mysliwiec*, 315 Mich App 414, 416; 890 NW2d 691 (2016) (cleaned up). The prosecutor asked the trial court at the first sentencing hearing if it was withdrawing the sentencing agreement because defendant had "been contemptful

to the Court." The trial court agreed, but, at the subsequent hearing, the trial court stated that it was not sure if it had held defendant in contempt, and, if it had, it was "going to cancel that." Accordingly, the record does not establish that defendant's conduct rose to a level compelling a contempt finding.

As defendant argues on appeal, caselaw has shown "misconduct" under MCR 6.310(B)(3) to include violations of court orders, absconding, or other clear wrongdoing, such as contacting victims. The record does not make clear that a reasonable person in defendant's place would have understood that admittedly disrespectful behavior during the hearings would constitute sufficient misconduct for purposes of forfeiting his sentencing agreement, particularly in context of defendant's statements expressing confusion about the trial court's ability to sentence him to life in prison. Although MCR 6.310(B)(3) specifies that "misconduct" is not limited to the list of examples it includes, defendant's actions did not constitute the type of misconduct that justifies the forfeiture of the right to withdraw a plea.

## III. CONCLUSION

We vacate defendant's convictions and sentences and remand this case to the trial court with instructions to give defendant the opportunity to withdraw his plea. Because this issue resolves defendant's appeal, we decline to address the additional issues that defendant raises. We do not retain jurisdiction.

/s/ Michael F. Gadola
/s/ Brock A. Swartzle
/s/ Anica Letica

-6-