*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

UNPUBLISHED
August 17, 2023

v

ADONTE MARQUIS BOUIE,

        Defendant-Appellant.

No. 351911
Oakland Circuit Court
LC No. 2018-267977-FC

## ON REMAND

Before: CAVANAGH, P.J., and K. F. KELLY and REDFORD, JJ.

PER CURIAM.

This case returns to this Court after the Michigan Supreme Court vacated our judgment and remanded the matter for reconsideration in light of its order in *People v Welsh*, ___ Mich ___; 980 NW2d 682 (2022) (*Welsh III*).[1] The broad language of the remand order suggests that this Court's entire opinion was vacated—even those provisions that did not pertain to the issue addressed in the *Welsh* order, i.e., the transferred-intent doctrine. We, therefore, reiterate extensive portions of our previous opinion. As explained in this Court's prior opinion, defendant filed an appeal of right, raising several issues challenging his jury trial conviction of conspiracy to commit first-degree premeditated murder, MCL 750.157a; MCL 750.316(1)(a), for which he was sentenced to life imprisonment without the possibility of parole. Defendant's appellate arguments were ultimately rejected and his conviction affirmed. *People v Bouie*, unpublished per curiam opinion of the Court of Appeals, issued September 23, 2021 (Docket No. 351911) (*Bouie I*), vacated & remanded 984 NW2d 203 (Mich, 2023). After reconsideration on remand, as directed by the Supreme Court, we continue to affirm defendant's conviction and sentence.

---

[1] *People v Bouie*, 984 NW2d 203, 203-204 (Mich, 2023) (*Bouie II*).

## I. BACKGROUND FACTS

The underlying facts were succinctly stated in our prior opinion. As explained in *Bouie I*:

Defendant was charged with conspiracy to commit first-degree premeditated murder; the charging document indicated that he committed the offense in Oakland County during the period from July 2016 to December 2016. In the same charging document, defendant was also charged with first-degree premeditated murder, MCL 750.316(1)(a), and three counts of assault with intent to commit murder, MCL 750.83, all pertaining to a shooting incident that occurred on August 5, 2016. There were also five charges of possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b, i.e., one charge of felony-firearm associated with each of the other charges described earlier in this paragraph. The charging document indicated that the murder victim was Aniya Edwards (Aniya) and that the victims of the three assaults with intent to commit murder were, respectively, Tyrell Rush, Jameel Tanzil, and Ki-Jana Morgan. In the same charging document, codefendant, Ashton Kevon Greenhouse, was charged with the same offenses as defendant.

At defendant's trial, Greenhouse testified that he had entered into a plea agreement with the prosecutor; as part of the plea agreement, Greenhouse was required to testify truthfully at defendant's trial. In particular, on April 11, 2018, Greenhouse pleaded guilty to second-degree murder, MCL 750.317, three counts of assault with intent to commit murder, and three counts of felony-firearm. The plea agreement called for Greenhouse to receive a minimum sentence of 25 years' imprisonment. Among other evidence presented at defendant's trial, Greenhouse provided testimony implicating defendant in the charged crimes.

The jury found defendant guilty of conspiracy to commit first-degree premeditated murder but not guilty of the other charges. [*Bouie I*, unpub op at 1-2.]

## II. DEFENDANT'S CHALLENGES TO HIS CONVICTION

### A. ORIGINAL APPEAL

The issues on appeal related to defendant's conviction were addressed in our prior opinion, *Bouie I*, in pertinent part, as follows:

Defendant first argues on appeal that there was insufficient evidence to support his conviction. We disagree.

A defendant's argument regarding the sufficiency of the evidence is reviewed de novo. *People v Kanaan*, 278 Mich App 594, 618; 751 NW2d 57 (2008). "When reviewing a defendant's challenge to the sufficiency of the evidence, [this Court] review[s] the evidence in a light most favorable to the prosecutor to determine whether any trier of fact could find the essential elements of the crime were proven beyond a reasonable doubt." *People v Williams*, 294 Mich

App 461, 471; 811 NW2d 88 (2011) (quotation marks and citation omitted). Direct evidence of guilt is not required. *Id*. "Rather, circumstantial evidence and reasonable inferences arising from that evidence can constitute satisfactory proof of the elements of a crime." *Id*. (quotation marks, brackets, and citation omitted). "This Court will not interfere with the trier of fact's role of determining the weight of the evidence or the credibility of witnesses." *Kanaan*, 278 Mich App at 619. "All conflicts in the evidence must be resolved in favor of the prosecution." *Id*.

MCL 750.157a provides, "Any person who conspires together with 1 or more persons to commit an offense prohibited by law, or to commit a legal act in an illegal manner is guilty of the crime of conspiracy . . . ." "A criminal conspiracy is a partnership in criminal purposes, under which two or more individuals voluntarily agree to effectuate the commission of a criminal offense." *People v Jackson*, 292 Mich App 583, 588; 808 NW2d 541 (2011). "Conspiracy is a specific-intent crime, because it requires both the intent to combine with others and the intent to accomplish the illegal objective." *People v Mass*, 464 Mich 615, 629; 628 NW2d 540 (2001). "The gist of conspiracy lies in the illegal agreement; once the agreement is formed, the crime is complete." *People v Seewald*, 499 Mich 111, 117; 879 NW2d 237 (2016) (quotation marks and citations omitted). "Direct proof of a conspiracy is not required; rather, proof may be derived from the circumstances, acts, and conduct of the parties." *Jackson*, 292 Mich App at 588 (quotation marks and citation omitted).

The illegal objective of the conspiracy in this case was first-degree premeditated murder. "The elements of first-degree murder are (1) the intentional killing of a human (2) with premeditation and deliberation." *People v Bennett*, 290 Mich App 465, 472; 802 NW2d 627 (2010). "Premeditation and deliberation, for purposes of a first-degree murder conviction, require sufficient time to allow the defendant to take a second look." *People v Orr*, 275 Mich App 587, 591; 739 NW2d 385 (2007) (quotation marks and citation omitted). For there to be a conspiracy to commit first-degree premeditated murder, each conspirator must have the intent required for that offense. *People v Hammond*, 187 Mich App 105, 108; 466 NW2d 335 (1991). An intent to kill may be inferred from the use of a dangerous weapon. *People v DeLisle*, 202 Mich App 658, 672; 509 NW2d 885 (1993).

Defendant argues that there was insufficient evidence to support his conviction of conspiracy to commit first-degree premeditated murder because there was no conspiracy to kill Aniya, i.e., the person who was actually killed during the August 5, 2016 shooting incident. But there is no requirement to prove a conspiracy to kill a person who was *actually* killed. Rather, "[t]he gist of conspiracy lies in the illegal agreement; once the agreement is formed, the crime is complete." *Seewald*, 499 Mich at 117. And contrary to defendant's assertion, the identity of the person who was the intended target of the conspiracy is not an element of conspiracy to commit first-degree murder.[1]

-3-

[1] Under defendant's theory, an agreement to plant a bomb, fly an airplane into a building, or fire an assault weapon into a crowd would not constitute a conspiracy to commit first-degree premeditated murder merely because the conspirators never identified a particular person who was the intended target of the conspiracy. Defendant cites no authority to support his untenable position.

_____

Greenhouse's testimony indicated that he and defendant were the persons who fired shots at a group of people on Thorpe Street in Pontiac on August 5, 2016, in retaliation for an earlier attempt to rob Greenhouse. There was ample testimony that defendant and Greenhouse were close associates and were angry about the attempted robbery of Greenhouse. Defendant and Greenhouse obtained assault rifles and drove to the Thorpe area, where Tanzil, Rush, and Morgan, who were members of a rival gang allegedly involved in the effort to rob Greenhouse, were among a group of people at a social gathering. Greenhouse and defendant fired their assault weapons at the group of people. Aniya, Tanzil, Rush, and Morgan were struck by bullets; Aniya died, and the other three were injured. Greenhouse further testified that, after he and defendant fired their assault rifles, they fled the scene and hid their weapons, which indicates their consciousness of guilt. See *People v Dixon-Bey*, 321 Mich App 490, 510; 909 NW2d 458 (2017) (efforts to hide evidence may indicate consciousness of guilt); *People v Coleman*, 210 Mich App 1, 4; 532 NW2d 885 (1995) (fleeing may indicate consciousness of guilt). Later in 2016, defendant, Edward Thompson, and Greenhouse armed themselves with firearms, discussed using their weapons, and tried unsuccessfully to locate the men allegedly involved in the attempted robbery of Greenhouse. Other witnesses testified regarding incriminating statements defendant made about his involvement in the shooting on Thorpe. There was sufficient evidence for a rational trier of fact to find that defendant intended to combine with Greenhouse to accomplish first-degree premeditated murder.

Defendant next argues that he was denied his constitutional right to due process because he was not given notice of whom he allegedly conspired to murder. Defendant's argument is unavailing.

To preserve a due-process argument for appellate review, a defendant must raise an objection on that ground in the trial court. *People v Hanks*, 276 Mich App 91, 92; 740 NW2d 530 (2007). As defendant concedes on appeal, he did not preserve his due-process argument by raising an objection on that ground below. Therefore, the due-process issue is not preserved.

A preserved due-process claim is reviewed de novo, *Jackson*, 292 Mich App at 590, but unpreserved constitutional issues are reviewed for plain error affecting substantial rights, *People v Carines*, 460 Mich 750, 763-764; 597 NW2d 130 (1999). Under the plain-error test, a defendant must show that (1) an error occurred, (2) the error was clear or obvious, and (3) the error prejudiced the defendant, i.e., it

affected the outcome of the proceedings. *Id*. at 763. If a defendant satisfies those requirements, reversal is warranted only if the error resulted in the conviction of an innocent defendant or seriously affected the fairness, integrity, or public reputation of the proceedings. *Id*. at 763-764.

"No person may be deprived of life, liberty, or property without due process of law." *People v McGee*, 258 Mich App 683, 699; 672 NW2d 191 (2003), citing US Const, Am V, and Const 1963, art 1, § 17. "In a criminal case, due process generally requires reasonable notice of the charge and an opportunity to be heard." *McGee*, 258 Mich App at 699. "[T]o establish a due process violation, a defendant must prove prejudice to his defense." *Id*. at 700. "Whether an accused is accorded due process depends on the facts of each case." *Id*.

Defendant asserts that the felony information failed to afford notice of the person(s) whom defendant allegedly conspired to murder. It is true that the count charging defendant and Greenhouse with conspiracy to commit first-degree premeditated murder did not identify a specific person who was the target of the conspiracy. But as explained earlier, the identity of the person who was the target of the conspiracy is not an element of conspiracy to commit first-degree premeditated murder. In any event, the felony information also charged defendant and Greenhouse each with three counts of assault with intent to commit murder; Tanzil, Rush, and Morgan were identified in the felony information as the respective victims of the three assaults with intent to commit murder. Defendant was thus provided notice that he was being charged in connection with efforts to kill Tanzil, Rush, and Morgan. Further, defendant has not demonstrated prejudice arising from any deficiency in the felony information. He has not explained what different defense would have been presented if Tanzil, Rush, and Morgan had been specifically named in the conspiracy count in addition to the counts in which they were already named. See *McGee*, 258 Mich App at 702 (the defendant did not establish actual prejudice because she did not explain "what different defense would have been presented[]"). Overall, defendant's due-process claim fails because he has not established that he was denied adequate notice and thus deprived of an adequate opportunity to prepare his defense.

Defendant further contends that he was denied the effective assistance of counsel because defense counsel did not request a bill of particulars. This argument is likewise unsuccessful.

To preserve a claim of ineffective assistance of counsel, a defendant must raise the issue in a motion for a new trial or a *Ginther* hearing filed below, *People v Heft*, 299 Mich App 69, 80; 829 NW2d 266 (2012), or in a motion to remand for a *Ginther* hearing filed in this Court, *People v Abcumby-Blair*, ___ Mich App ___, ___: ___ NW2d ___ (2020) (Docket No. 347369); slip op at 8, lv pending. Defendant did not raise this claim of ineffective assistance of counsel below by filing a motion for a new trial or a *Ginther* hearing, or in this Court by filing a motion to remand for a *Ginther* hearing. Hence, the issue is unpreserved. Because

no *Ginther* hearing was held, this Court's review is limited to the existing record. *Id.*

Whether a defendant was denied the effective assistance of counsel presents a mixed question of fact and constitutional law. *Heft*, 299 Mich App at 80. Findings of fact are reviewed for clear error, and questions of law are reviewed de novo. *Id.*

"To prove that his defense counsel was not effective, the defendant must show that (1) defense counsel's performance fell below an objective standard of reasonableness and (2) there is a reasonable probability that counsel's deficient performance prejudiced the defendant." *People v Lane*, 308 Mich App 38, 68; 862 NW2d 446 (2014). "Effective assistance of counsel is presumed, and the defendant bears a heavy burden of proving otherwise." *People v Head*, 323 Mich App 526, 539; 917 NW2d 752 (2018) (quotation marks, brackets, and citation omitted). "In examining whether defense counsel's performance fell below an objective standard of reasonableness, a defendant must overcome the strong presumption that counsel's performance was born from a sound trial strategy." *People v Trakhtenberg*, 493 Mich 38, 52; 826 NW2d 136 (2012). To establish prejudice, a defendant must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *People v Randolph*, 502 Mich 1, 9; 917 NW2d 249 (2018) (quotation marks and citation omitted). A "defendant has the burden of establishing the factual predicate for his claim of ineffective assistance of counsel." *People v Hoag*, 460 Mich 1, 6; 594 NW2d 57 (1999).

MCR 6.112(E) provides, "The court, on motion, may order the prosecutor to provide the defendant a bill of particulars describing the essential facts of the alleged offense." A preliminary examination obviates the need for a bill of particulars by informing the defendant of the nature of the charges against him. *People v Harbour*, 76 Mich App 552, 557; 257 NW2d 165 (1977); *People v Jones*, 75 Mich App 261, 270; 254 NW2d 863 (1977). A preliminary examination was held in this case on August 17, 2018. Defendant fails to address this point or to explain why the preliminary examination would not have provided adequate notice of the nature of the charges against him. Therefore, defendant has not established that a bill of particulars was needed or that defense counsel was ineffective for failing to request one. "Failing to advance a meritless argument or raise a futile objection does not constitute ineffective assistance of counsel." *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010).

Defendant next argues that the trial court erred in instructing the jury on conspiracy to commit first-degree premeditated murder because the jury was never instructed that the identity of the person who was the intended target of the conspiracy was an element of the offense. This issue is waived because defendant affirmatively approved the instruction below. Before the final instructions were read to the jury, defense counsel approved of the instructions during exchanges with

-6-

the trial court outside the presence of the jury. Also, after the trial court provided its final instructions to the jury, including the instruction challenged on appeal, the trial court asked, "Any objection to the instructions as read?" Defense counsel responded, "None." By expressly approving the jury instructions, defendant waived review of the alleged instructional error. See *People v Kowalski*, 489 Mich 488, 503-505; 803 NW2d 200 (2011). Waiver extinguishes any error, meaning that there is no error to review. *Id*.

Defendant further argues that defense counsel was ineffective for failing to object to the instruction and for waiving the alleged instructional error. Defendant's argument on this point is unavailing.

Defendant did not raise this claim of ineffective assistance of counsel below by filing a motion for a new trial or a *Ginther* hearing, or in this Court by filing a motion to remand for a *Ginther* hearing. Hence, the issue is unpreserved. Because no *Ginther* hearing was held, this Court's review is limited to the existing record. *Abcumby-Blair*, ___ Mich App at ___; slip op at 8.

Jury instructions are considered "as a whole, rather than piecemeal, to determine whether any error occurred." *Kowalski*, 489 Mich at 501. "A criminal defendant has a constitutional right to have a jury determine his or her guilt from its consideration of every essential element of the charged offense. A defendant is thus entitled to have all the elements of the crime submitted to the jury in a charge which is neither erroneous nor misleading." *Id*. (quotation marks, brackets, ellipsis, and citations omitted). "Instructional errors that omit an element of an offense, or otherwise misinform the jury of an offense's elements, do 'not *necessarily* render a criminal trial fundamentally unfair or an unreliable vehicle for determining guilt or innocence.' " *Id*., quoting *Neder v United States*, 527 US 1, 9; 119 S Ct 1827; 144 L Ed 2d 35 (1999). Hence, "an imperfect instruction is not grounds for setting aside a conviction if the instruction fairly presented the issues to be tried and adequately protected the defendant's rights." *Kowalski*, 489 Mich at 501-502.

The trial court instructed the jury as follows regarding the elements of conspiracy to commit first-degree premeditated murder:

> The Defendant is charged with the crime of conspiracy to commit first[-]degree, premeditated murder. Anyone who knowingly agrees with someone else to commit murder is guilty of conspiracy.
>
> To prove the Defendant's guilt, the Prosecutor must prove each of the following elements beyond a reasonable doubt:
>
> First, that the Defendant and someone else knowingly agreed to commit first[-]degree, premeditated murder.
>
> Second, that the Defendant specifically intended to commit or help commit that crime.

Third, that this agreement took place or continued during the period from July 2016 through December 2016.

The trial court also instructed the jury regarding the elements of first-degree premeditated murder, including regarding the meaning of both premeditation and deliberation, when instructing the jury on the separate charge of first-degree premeditated murder. The trial court further instructed the jury on the concept of transferred intent as follows: "If the Defendant or anyone he aided and abetted intended to kill one person but by mistake or accident killed another person, the crime is the same as if the first person had actually been killed."

The trial court's instructions, when read as a whole, fairly presented the issues to be tried and adequately protected defendant's rights. The instruction on conspiracy to commit first-degree premeditated murder conformed with applicable legal principles set forth earlier in this opinion. That is, the court correctly informed the jury that defendant and someone else must have knowingly agreed to commit first-degree premeditated murder and that defendant must have specifically intended to commit or help commit that crime. See *Jackson*, 292 Mich App at 588 ("A criminal conspiracy is a partnership in criminal purposes, under which two or more individuals voluntarily agree to effectuate the commission of a criminal offense."). Again, "[t]he gist of conspiracy lies in the illegal agreement; once the agreement is formed, the crime is complete." *Seewald*, 499 Mich at 117 (quotation marks and citations omitted). The instructions, when read as a whole, also informed the jury regarding the elements of first-degree premeditated murder, including regarding the mental state required for that crime. Contrary to defendant's assertion, the identity of the person who was the intended target of the conspiracy is not an element of conspiracy to commit first-degree murder, and the court did not err in failing to include such an element in its instructions. Defense counsel was not ineffective for failing to make a meritless argument or raise a futile objection to the jury instructions. *Ericksen*, 288 Mich App at 201.

Defendant next argues that defense counsel was ineffective for failing to request a specific unanimity instruction. We disagree.

Defendant did not raise this claim of ineffective assistance of counsel below by filing a motion for a new trial or a *Ginther* hearing, or in this Court by filing a motion to remand for a *Ginther* hearing. Hence, the issue is unpreserved. Because no *Ginther* hearing was held, this Court's review is limited to the existing record. *Abcumby-Blair*, ___ Mich App at ___; slip op at 8.

The trial court provided a general instruction on unanimity to the jury. The trial court instructed: "A verdict in a criminal case must be unanimous. In order to return a verdict, it is necessary that each of you agrees on that verdict." Defendant nonetheless argues that defense counsel was ineffective for failing to request a specific unanimity instruction regarding the identity of the person who was the intended target of the conspiracy. Defendant's argument is unavailing.

Criminal defendants are entitled to a unanimous jury verdict. *People v Chelmicki*, 305 Mich App 58, 67; 850 NW2d 612 (2014), citing MCR 6.410(B). The trial court must properly instruct the jury regarding the unanimity requirement. *Chelmicki*, 305 Mich App at 67-68. A general instruction on unanimity is ordinarily sufficient, but "a specific unanimity instruction may be required in cases in which more than one act is presented as evidence of the actus reus of a single criminal offense and each act is established through materially distinguishable evidence that would lead to juror confusion." *Id*. at 68 (quotation marks and citation omitted). In the present case, there was no risk of juror confusion. This case does not involve multiple acts presented as evidence of the actus reus of a single offense with each act established through materially distinguishable evidence. The prosecution theory was not that complicated: defendant agreed with Greenhouse to commit premeditated murder. The illegal agreement is the gist of the conspiracy, *Seewald*, 499 Mich at 117, and the illegal agreement comprised a single criminal act. Defendant suggests that there could have been juror confusion or disagreement regarding who was the intended victim or target of the conspiracy, but again, this is not an element of the offense. A specific unanimity instruction was not required, and defense counsel was not ineffective for failing to make a futile request. *Chelmicki*, 305 Mich App at 69. [*Bouie I*, unpub op at 2-7.]

Accordingly, this Court concluded that defendant's challenges on appeal to his conviction of conspiracy to commit first-degree premeditated murder were without merit.

## B. DEFENDANT'S LEAVE TO APPEAL GRANTED

Thereafter, defendant filed an application for leave to appeal in our Supreme Court. The Supreme Court held the application in abeyance for *Welsh III*. *People v Bouie*, 978 NW2d 825, 825-826 (Mich, 2022). While defendant's application was pending, our Supreme Court entered an order in *Welsh III* stating:

On October 13, 2022, this Court heard oral argument on the application for leave to appeal the June 18, 2019 and February 18, 2021 judgments of the Court of Appeals. On order of the Court, the application is again considered. MCR 7.305(H)(1). We REVERSE in part the June 18, 2019 judgment of the Court of Appeals and REMAND this case to the Saginaw Circuit Court for a new trial before a properly instructed jury. The Court of Appeals correctly held that the trial court erred when it instructed the jury that the defendant's conspiracy with regard to an intent to murder one individual could be transferred to charges of conspiracy with intent to murder others. The panel erred, however, in finding no cause to reverse. The trial court's erroneous instruction that the transferred-intent doctrine applied to the defendant's conspiracy charges permitted the jury to find the defendant guilty of conspiracy against the identified victims (Berrian and Jones) on the basis of a different, uncharged conspiracy against one individual (DT). The jury's note during deliberations suggests that the jury did so, and at a minimum, even assuming that the error was nonconstitutional, the defendant is entitled to a new trial because the error "undermined reliability in the verdict." *People v Cornell*, 466 Mich 335, 364; 646 NW2d 127 (2002). In all other respects, the application for leave to appeal

is DENIED, because we are not persuaded that the remaining questions presented should be reviewed by this Court. [*Welsh III*, 980 NW2d at 682.]

Our Supreme Court later entered an order in the present case stating: "[I]n lieu of granting leave to appeal, we VACATE the judgment of the Court of Appeals and we REMAND this case to the Court of Appeals for reconsideration in light of *Welsh*." *Bouie II*, 984 NW2d at 203-204.

## C. REMAND PROCEEDINGS & ANALYSIS

On remand, the parties jointly moved to file supplemental briefs, and the motion was granted. *People v Bouie*, unpublished order of the Court of Appeals, entered March 9, 2023 (Docket No. 351911). The parties have filed supplemental briefs.

In his supplemental brief, defendant argues that *Welsh III* should alter the way this Court analyzes his challenges to the sufficiency of the evidence and the fairness of his trial. According to defendant, *Welsh III* indicates that the target of a conspiracy must be identified and that the transferred-intent theory does not apply to a conspiracy charge. Thus, the evidence was insufficient to support a conspiracy conviction because the evidence failed to establish the identity of a person whom defendant conspired to kill. Also, defendant argues, he did not receive fair notice of the identity of person who was the target of the conspiracy, and defense counsel was ineffective for failing to insist on such notice. Further, the jury was not instructed that the identity of the intended victim of the conspiracy was an element of the conspiracy charge. And a specific unanimity instruction was required. Moreover, the jury should have been instructed that the transferred-intent theory did not apply to the conspiracy charge.

In its supplemental brief, the prosecution argues that *Welsh III* is of no consequence to this Court's opinion in *Bouie I*, our prior opinion. Nothing in *Welsh III* undermines this Court's conclusion that the identity of the person who was the intended target of the conspiracy is not an element of the offense. *Welsh III* merely holds that the transferred-intent doctrine does not apply to conspiracy charges. Unlike in *Welsh III*, the present case contains no indication that defendant engaged in a different conspiracy than the one charged. Defendant was not denied due process. The target of the conspiracy is not an element of conspiracy to commit first-degree murder; moreover, Tanzil, Rush, and Morgan were identified in the felony information as the respective victims of the counts of assault with intent to commit murder. Unlike in *Welsh III*, the jury here expressed no confusion regarding the conspiracy or transferred-intent instructions, defense counsel did not object to the instructions, and the jury was not told that the transferred-intent instruction applied to the conspiracy charge. Even if defense counsel should have asked that the jury be told the transferred-intent doctrine did not apply to the conspiracy charge, defendant cannot demonstrate prejudice. The conspiracy count was not based on a theory of transferred intent. Also, the conspiracy here lasted for several months and did not end on the day of the Thorpe Street shooting.

After reconsideration on remand, we conclude that our prior opinion, *Bouie I*, correctly rejected defendant's appellate arguments, and our Supreme Court's order in *Welsh III* does not alter the proper analysis of the issues raised on appeal.

As explained above, our Supreme Court has vacated this Court's judgment in *Bouie I* and remanded the case to this Court for reconsideration in light of the order entered in *Welsh III*. Orders of our Supreme Court constitute binding precedent when the rationale can be understood, even if doing so requires examination of other opinions in the case, including unpublished opinions. *Woodring v Phoenix Ins Co*, 325 Mich App 108, 115; 923 NW2d 607 (2018); *Evans & Luptak, PLC v Lizza*, 251 Mich App 187, 195-196; 650 NW2d 364 (2002). An unpublished opinion of this Court is required to understand the Supreme Court's rationale in *Welsh III*.

## 1. THE WELSH CASE

In *People v Welsh*, unpublished per curiam opinion of the Court of Appeals, issued June 18, 2019 (Docket No. 341519), p 1 (*Welsh I*), rev'd in part & remanded, lv den in part 980 NW2d 682 (2022), this Court explained that the "[d]efendant was convicted by jury of two counts of conspiracy to commit assault with intent to murder, MCL 750.83, MCL 750.157a, and three counts of" felony-firearm. The defendant "was acquitted of two counts of assault with intent to murder, one count of discharge of a firearm from a vehicle, and one count of discharge of a firearm at a building." *Id*. This Court summarized the underlying facts:

> Defendant, Brandon Grace and Hannah Grace, their mother, Megan Gloude, Carl Wardell, Jr., and Destinie Wardell agreed to drive by a home where they thought that an individual named "DT" lived to kill him in retaliation for the death of their acquaintance. The group drove by the home twice. On at least the last of the two drive-bys, there were a number of people socializing on the porch, including the owner of the home, Sonnet Berrian, three other adults, and two children. Brandon Jones, Berrian's fiancé, was inside the residence. Defendant discharged her weapon, but it did not fire. The group drove by a third time, and at least five shots were fired, including shots fired by defendant. No one was injured. [*Id*.]

On appeal, the defendant argued "that the trial court erred when it instructed the jury that defendant's conspiracy with regard to an intent to murder one individual could be transferred to a charge of conspiracy with intent to murder others." *Id*. at 4. This Court agreed but found no cause to reverse. *Id*. This Court noted that the "[d]efendant was not charged with conspiracy to commit assault with intent to murder DT" but rather "was charged with conspiracy to commit assault with intent to murder Berrian and Jones, and assault with intent to murder Berrian and Jones." *Id*.

> When instructing the jury on the assault charges, the trial court stated that "[i]f the defendant intended to assault or kill one person, but by mistake or accident killed or assaulted another person, the crime is the same as if the first person had actually been killed or assaulted." The court did not discuss intended targets while instructing the jury on the conspiracy charges. During deliberations, the jury asked whether the "transfer effect" could apply to a thought, and asked for instructions regarding the conspiracy charges, stating: "We understand what it is, but I'm personally having trouble convicting someone of two counts, two counts of conspiracy with assault with intent to murder [Jones] and [Berrian], when, if they did conspire, it was about one person, DT." The trial court stated to trial counsel that a conspiracy involved an intent to combine with others and an intent to accomplish the crime, here murder, and the object of the conspiracy can be

-11-

transferred to the people who were targeted by it. The trial court then informed the jury that "transferred intent can apply to a conspiracy charge. It's up to all of you to decide if it applies to conspiracy charges in this case." [*Id.*]

"[T]he charged crime that led to defendant's conviction was the agreement to assault Berrian and Jones," but "the express agreement between defendant and her cohorts initially was to kill DT." *Id*. This Court stated that "the intent to assault Berrian and Jones with the intent to kill could be inferred by transferring the intent of defendant and the group to kill DT, but *the agreement* to assault them should not have been inferred from the intent to kill DT." *Id*. at 5. "[B]ecause the conspiracy crime is separate from the assault crime, and focuses on the agreement, the conspiracy crime should be limited to the scope of the agreement, and the trial court erred by informing the jury that transferred intent could apply to a conspiracy charge." *Id*.

> Nonetheless, this Court determined that the error was harmless, explaining:

> Here, one juror questioned whether transferred intent could be utilized to demonstrate the conspiracy to assault Jones and Berrian. However, the evidence was sufficient to establish that defendant participated in a conspiracy to assault Jones and Berrian, without transferred intent. While denying defendant's motion for judgment notwithstanding the verdict, the trial court stated that the conspiracy began with an intent to murder DT and that intent may have been transferred to Berrian and Jones, but there was also evidence of an agreement to murder Berrian and Jones because the assailants had driven by them once, and returned to shoot at them. As the trial court noted, the verdict was established by the evidence, despite the erroneous instruction. Thus, the instructional error did not undermine the reliability of the verdict. [*Id.*]

This Court also observed:

> Again, however, where there was evidence that defendant and the group would have known that there were other occupants in the house given that they would have seen them on the porch, and the implicit agreement was to go through with shooting at the house knowing various individuals were there, the jury would not have had to reach the issue of transferred intent to convict defendant. *The problem arises simply because the jury raised the question regarding transferred intent*. [*Id.* at 5 n 1 (emphasis added).]

This Court affirmed the defendant's convictions but remanded for resentencing on grounds that are not relevant here. *Id*. at 1, 10-13.

After the defendant in *Welsh* was resentenced, she filed another appeal of right, arguing that she was again entitled to resentencing; this Court rejected the defendant's argument and affirmed. *People v Welsh*, unpublished per curiam opinion of the Court of Appeals, issued February 18, 2021 (Docket No. 352517) (*Welsh II*). The defendant then applied for leave to appeal in our Supreme Court, which heard oral argument on the application and then entered an order stating, in relevant part:

We REVERSE in part the June 18, 2019 judgment of the Court of Appeals and REMAND this case to the Saginaw Circuit Court for a new trial before a properly instructed jury. The Court of Appeals correctly held that the trial court erred when it instructed the jury that the defendant's conspiracy with regard to an intent to murder one individual could be transferred to charges of conspiracy with intent to murder others. The panel erred, however, in finding no cause to reverse. The trial court's erroneous instruction that the transferred-intent doctrine applied to the defendant's conspiracy charges permitted the jury to find the defendant guilty of conspiracy against the identified victims (Berrian and Jones) on the basis of a different, uncharged conspiracy against one individual (DT). The jury's note during deliberations suggests that the jury did so, and at a minimum, even assuming that the error was nonconstitutional, the defendant is entitled to a new trial because the error "undermined reliability in the verdict." *People v Cornell*, 466 Mich 335, 364; 646 NW2d 127 (2002). In all other respects, the application for leave to appeal is DENIED, because we are not persuaded that the remaining questions presented should be reviewed by this Court. [*Welsh III*, 980 NW2d at 682.]

## 2. WELSH NOT APPLICABLE

We conclude that our Supreme Court's order in *Welsh III* has no applicability here. In his supplemental brief, defendant asserts that "*Welsh* confirms the necessity of identifying the target of an alleged assault conspiracy." But our Supreme Court in *Welsh III* did *not* hold that the identity of the intended target(s) of the conspiracy is an element of conspiracy to commit first-degree murder. Although the conspiracy charges in *Welsh III* had identified Berrian and Jones as the victims or targets of the conspiracy, neither this Court nor our Supreme Court held that this was legally required, i.e., that the identity of the target(s) of the conspiracy was an element of the offense. And the ramification of inferring the existence of such an unstated holding in the order would mean—as we stated in our prior opinion—that "an agreement to plant a bomb, fly an airplane into a building, or fire an assault weapon into a crowd would not constitute a conspiracy to commit first-degree premeditated murder merely because the conspirators never identified a particular person who was the intended target of the conspiracy." *Bouie I*, unpub op at 3 n 1.

Our Supreme Court's order in *Welsh III* should be understood to mean what it actually says. The Court upheld this Court's determination that the transferred-intent doctrine did not apply in the context of the conspiracy charges in that case, but rejected this Court's determination that the error was harmless. *Welsh III*, 980 NW2d at 682. In particular, our Supreme Court agreed with this Court "that the trial court erred when it instructed the jury that the defendant's conspiracy with regard to an intent to murder one individual could be transferred to charges of conspiracy with intent to murder others." *Id*. The Court reasoned that reversal was required because the erroneous instruction "permitted the jury to find the defendant guilty of conspiracy against the identified victims (Berrian and Jones) on the basis of a different, uncharged conspiracy against one individual (DT)." *Id*. A jury note from deliberations suggested that the jury did exactly that. *Id*.

The present case differs from *Welsh III*. Unlike in *Welsh III*, the jury was never instructed that the transferred-intent doctrine applied to the conspiracy charge, and the jury never expressed confusion regarding the relevant instructions or provided a note suggesting that it was finding defendant guilty of the charged conspiracy on the basis of a different, uncharged conspiracy.

-13-

It is true that the trial court provided a transferred-intent instruction, but this was after the court had instructed on all of the charged offenses, including first-degree premeditated murder, which came after the conspiracy instruction. The language of the transferred-intent instruction indicated that it applied to a killing, thus reflecting that the instruction pertained to the murder charge, which required a killing, rather than the conspiracy charge, which did not require an actual killing.[2] Unlike in *Welsh III*, the jury never expressed confusion regarding the relevant instructions, and the trial court never told the jury that the transferred-intent instruction applied to the conspiracy charge. Moreover, the trial court informed the jury that the conspiracy was alleged to have occurred from July 2016 to December 2016, i.e., it continued after the August 5, 2016 shooting incident. The jury was thus apprised that the conspiracy was alleged to have continued after the shooting incident that resulted in an actual killing. Evidence supported the prosecution theory of a continuing conspiracy. See *Bouie I*, unpub op at 3. This timeline further undercuts any contention that the jury would have misunderstood the transferred-intent instruction, which referred to a killing, as applicable to the conspiracy charge. And the trial court instructed the jury that, "[i]f the defendant agreed to commit a completely different crime, then he is not guilty of conspiracy to commit murder."

Considering the jury instructions as a whole, the jury was not given any reason to believe that the transferred-intent instruction applied to the conspiracy charge. The jury was not provided any instruction suggesting that it could find defendant guilty of the charged conspiracy on the basis of a different, uncharged conspiracy, and there is no indication that the jury did so. Nor did the prosecution present any theory that would have led the jury to find defendant guilty on the basis of an uncharged conspiracy. Overall, this case differs from *Welsh III*, and no error occurred.

We next consider, and reject, defendant's arguments on remand. First, nothing in *Welsh III* alters our holding that there was sufficient evidence to support defendant's conviction. We identified the elements of the offense and explained at length why the evidence was sufficient to satisfy those elements. *Bouie I*, unpub op at 2-3. We adopt that analysis and continue to conclude that sufficient evidence supported defendant's conviction.

In his supplemental brief, defendant again asserts that he was denied fair notice of the target(s) of the conspiracy because the felony information did not identify the intended target(s). But as we previously explained in *Bouie I*, "the identity of the person who was the target of the conspiracy is not an element of conspiracy to commit first-degree premeditated murder." *Bouie I*, unpub op at 4. Here, the felony information identified Tanzil, Rush, and Morgan "as the respective victims of the three assaults with intent to commit murder" and that "[d]efendant was thus provided notice that he was being charged in connection with efforts to kill Tanzil, Rush, and Morgan." *Id*. By contrast, there is no indication that DT, the intended target of the drive-by shooting in *Welsh III*, was ever identified in the charging document as a victim of the charged crimes. In short, there is nothing in *Welsh III* that alters our previous conclusion, which we adopt here, that "defendant's

---

[2] In particular, the transferred-intent instruction provided, "If the Defendant or anyone he aided and abetted intended to kill one person but by mistake or accident killed another person, the crime is the same as if the first person had actually been killed." The instruction by its very terms thus applied to a killing, but the conspiracy charge did not require an actual killing.

due-process claim fails because he has not established that he was denied adequate notice and thus deprived of an adequate opportunity to prepare his defense." *Id.*

Next, defendant's contention that his trial counsel was ineffective for failing to request a bill of particulars remains unavailing. As we previously explained, a preliminary examination obviates the need for a bill of particulars, a preliminary examination was held in this case, and defendant has failed to explain why the preliminary examination would not have provided adequate notice of the nature of the charges. *Id.* at 5. Thus, we adopt our previous conclusion that "defendant has not established that a bill of particulars was needed or that defense counsel was ineffective for failing to request one." *Id.*

As for defendant's claim of instructional error, there is nothing in *Welsh III* to alter our previous conclusion that defendant waived any instructional error by expressly approving the jury instructions. *Id.* And defendant remains unable to establish that his trial counsel was ineffective for failing to object or for waiving the alleged instructional error. As we explained, the conspiracy instruction "conformed with applicable legal principles" by "inform[ing] the jury that defendant and someone else must have knowingly agreed to commit first-degree premeditated murder and that defendant must have specifically intended to commit or help commit that crime." *Id.* at 6-7. "[T]he identity of the person who was the intended target of the conspiracy is not an element of conspiracy to commit first-degree murder, and the court did not err in failing to include such an element in its instructions." *Id.* at 7. "Defense counsel was not ineffective for failing to make a meritless argument or raise a futile objection to the jury instructions." *Id.* We also explained why defense counsel was not ineffective for failing to request a specific unanimity instruction, *id.*, and nothing in *Welsh III* affects the proper analysis of that issue which we adopt here.

Finally, in his supplemental brief on remand, defendant argues that the jury should have been informed that the transferred-intent instruction did not apply to the conspiracy charge. He asserts that the trial court plainly erred or that defense counsel was ineffective for failing to request such a clarification in the instructions. As for the allegation of instructional error, defendant remains unable to overcome the fact that his trial counsel waived any alleged error by approving the instructions that were given. Moreover, defendant cannot establish ineffective assistance of his trial counsel on this issue. As already explained, this case differs from *Welsh III*. The conspiracy instruction indicated that the agreement to commit first-degree premeditated murder was alleged to have occurred from July 2016 through December 2016, i.e., it continued after the August 5, 2016 shooting incident that resulted in a killing. The conspiracy instruction was given first, followed by the instructions on the other charged offenses, including first-degree premeditated murder, and only after all of those instructions was the transferred-intent instruction given. Unlike in *Welsh III*, the jury did not express confusion about the transferred-intent instruction, the jury was not told that the transferred-intent instruction could apply to the conspiracy charge, and the jury did not provide a note indicating that it was finding defendant guilty of the charged conspiracy on the basis of a different, uncharged conspiracy. Given the circumstances of the instant case, we adopt our previous holding that defendant has not demonstrated that his trial counsel's performance was constitutionally deficient or that defendant was prejudiced by such performance.

Accordingly, after reconsideration in light of *Welsh III*, we continue to affirm defendant's conviction of conspiracy to commit first-degree premeditated murder.

-15-

## III. DEFENDANT'S CHALLENGES TO HIS SENTENCE

Again, because of the broad language of the Supreme Court's remand order suggesting that this Court's entire opinion was vacated, i.e., *Bouie I*, we reiterate—and reaffirm—the resolution of defendant's issues on appeal related to his sentence, in pertinent part, as follows:

Defendant next argues that the trial court lacked authority to sentence him to life imprisonment without parole for his conviction of conspiracy to commit first-degree premeditated murder. Defendant's argument fails.

"To preserve a sentencing issue for appeal, a defendant must raise the issue at sentencing, in a proper motion for resentencing, or in a proper motion to remand filed in the court of appeals." *People v Anderson*, 322 Mich App 622, 634; 912 NW2d 607 (2018) (quotation marks and citations omitted). Defendant did not raise this issue at sentencing, in a proper motion or resentencing, or in a proper motion to remand filed in this Court. Therefore, the issue is unpreserved.

"[T]his Court's review is limited to plain error affecting substantial rights because the issue was not preserved." *People v Clark*, 315 Mich App 219, 224; 888 NW2d 309 (2016).

Relief is available only when (1) an error occurred, (2) the error was plain, meaning clear or obvious, and (3) the plain error affected substantial rights, meaning it affected the outcome of the proceedings. Additionally, reversal is warranted only when the plain, forfeited error resulted in the conviction of an actually innocent defendant or when the error seriously affected the fairness, integrity, or public reputation of the judicial proceedings. [*Id.* (citation omitted).]

The conspiracy statute, MCL 750.157a(a), provides that a person convicted of conspiracy to commit an offense punishable by imprisonment for one year or more "shall be punished by a penalty equal to that which could be imposed if he had been convicted of committing the crime he conspired to commit . . . ." Defendant was convicted of conspiracy to commit first-degree premeditated murder. The first-degree murder statute provides that a person convicted of that offense "shall be punished by imprisonment for life without eligibility for parole." MCL 750.316. The trial court was thus bound to sentence defendant to life imprisonment without parole for his conviction of conspiracy to commit first-degree premeditated murder.

In *People v Jahner*, 433 Mich 490, 504; 446 NW2d 151 (1989), our Supreme Court held that "a person sentenced to life imprisonment for conspiracy to commit first-degree murder is eligible for parole consideration . . . ." But *Jahner* was decided before MCL 750.316 was amended in 2014 to add language requiring that persons convicted of first-degree murder be sentenced to life imprisonment *without parole*. See 2014 PA 23. *Jahner* thus did not address the language in the

current version of MCL 750.316.  The trial court did not plainly err in imposing a sentence of life imprisonment without parole.

Defendant next argues that a mandatory sentence of life imprisonment without the possibility of parole for a conviction of conspiracy to commit first-degree premeditated murder constitutes cruel or unusual punishment in violation of the Michigan Constitution.  We disagree.

"To preserve a claim that the defendant's sentence[] [was] unconstitutionally cruel or unusual, the defendant must raise the claim in the trial court." *People v Burkett*, ___ Mich App ___, ___; ___ NW2d ___ (2021) (Docket No. 351882); slip op at 2.  Defendant did not raise this issue below.  Therefore, the issue is unpreserved.

This Court has explained:

This Court generally reviews constitutional questions de novo.  However, we review unpreserved constitutional issues for plain error affecting substantial rights.  To establish entitlement to relief under plain-error review, the defendant must establish that an error occurred, that the error was plain, i.e., clear or obvious, and that the plain error affected substantial rights.  An error affects substantial rights when it impacts the outcome of the lower court proceedings.  Reversal is warranted only when the error resulted in the conviction of an actually innocent defendant or seriously affected the fairness, integrity, or public reputation of judicial proceedings independently of the defendant's innocence. [*Burkett*, ___ Mich App at ___; slip op at 2 (quotation marks and citations omitted).]

Const 1963, art 1, § 16 prohibits cruel or unusual punishment.  *Burkett*, ___ Mich App at ___; slip op at 3.  This constitutional proscription includes a prohibition of grossly disproportionate sentences.  *Id.*

This Court employs the following three-part test in determining whether a punishment is cruel or unusual: (1) the severity of the sentence imposed and the gravity of the offense, (2) a comparison of the penalty to penalties for other crimes under Michigan law, and (3) a comparison between Michigan's penalty and penalties imposed for the same offense in other states.  Legislatively mandated sentences are presumptively proportional and presumptively valid.  In order to overcome the presumption that the sentence is proportionate, a defendant must present unusual circumstances that would render the presumptively proportionate sentence disproportionate.  Statutes are presumed to be constitutional, and the courts have a duty to construe a statute as

-17-

constitutional unless its unconstitutionality is clearly apparent. [*Id*. (quotation marks and citations omitted).]

In *People v Fernandez*, 427 Mich 321, 335; 398 NW2d 311 (1986), our Supreme Court held that "a mandatory life sentence, even if nonparolable, imposed for conspiracy to commit first-degree murder is not so excessive as to constitute cruel and unusual punishment." The Court noted that "[c]onspiracy to commit first-degree murder is an extremely serious offense, perhaps exceeded only by first-degree murder itself." *Id*. at 336. "Conspiracy can be as dangerous as a completed offense because it may give rise to a cooperation among criminals that is a special hazard." *Id*. The Court further observed that, "[i]n enacting MCL 750.157a, the Legislature decided that conspiracy to commit a given offense was as serious as the actual commission, or that the conspiracy was sufficiently serious to merit the same punishment." *Fernandez*, 427 Mich at 337. Further, when comparing the offense to other crimes in Michigan that carry a mandatory life sentence, our Supreme Court could not "say that a conspiracy to commit first-degree murder such as occurred in this case is so much less culpable than these offenses as to constitutionally invalidate a mandatory life sentence." *Id*. Nor did a consideration of the sentences imposed by other states for the same offense require a finding of disproportionality. *Id*. at 337-338. Lastly, although a nonparolable life sentence does not advance a goal of rehabilitation,

> [o]ther policies, such as deterrence of others, deterrence of the offender, or punishment of the offender, may suffice to deflect a cruel and unusual punishment challenge. In the instant case, the fact that a conspiracy conviction requires the same punishment as the substantive target offense carries the message to potential wrongdoers that conspiratorial agreements involve substantial risks and dangers. This is a rational deterrence effort. Where a crime involves advance planning, such as premeditated murder and conspiracy, the possibility of deterring the potential wrongdoer from engaging in the illicit activity by a stringent penalty is more realistic than in crimes committed on impulse. Furthermore, a life sentence certainly protects society at large from an offender during the time of imprisonment. Finally, the retributive punishment factor is a valid consideration in cases such as this, where the potential harm to society is great. [*Id*. at 339.]

Accordingly, our Supreme Court in *Fernandez* held that

> the punishment of life imprisonment, even if nonparolable, is not cruel and unusual punishment under the federal or Michigan Constitutions. The punishment, while strong, is not disproportionate to the crime when viewed in light of the gravity of the offense, sentences for other crimes in Michigan, sentences for the same crime in other states, and policies behind punishment. [*Id*.]

In light of our Supreme Court's holding in *Fernandez*, defendant's argument fails. He has not established that a mandatory sentence of life imprisonment without parole for conspiracy to commit first-degree murder is cruel or unusual punishment. Nor has defendant "presented this Court with any unusual circumstances that would render the presumptively proportionate legislatively mandated sentence disproportionate." *Burkett*, ___ Mich App at ___; slip op at 6.[4] The trial court did not plainly err in imposing the sentence of life imprisonment without parole. [*Bouie I*, unpub op at 8-10.]

---

[4] Defendant notes that he "was just 20 years old in August 2016" when the shooting on Thorpe occurred, but he provides no elaboration or argument explaining whether or how he thinks his age at that time would constitute an unusual circumstance that renders his presumptively proportionate legislatively mandated sentence disproportionate.

---

Accordingly, we again affirm defendant's sentence of life imprisonment without the possibility of parole for his conviction of conspiracy to commit first-degree premeditated murder.

Affirmed.

/s/ Mark J. Cavanagh
/s/ Kirsten Frank Kelly
/s/ James Robert Redford

-19-